WILLIAM G. LITTLE, Administrator of WILLIAM F. LITTLE, deceased, *vs*. AMERICAN TELEPHONE AND TELEGRAPH COMPANY, OF DELAWARE, a corporation of the State of Delaware.

*Action for Damages—Destruction of Natural Spring of Water, In Making Hole for Telephone Pole—Negligence—Right of Way for Telephone Contract; Powers Thereunder —Waters; Percolating or Oozing through the Soil; Diversion of—Damages.*

1. The authorities generally. hold that in the absence of express contract, and a positive authorized regulation, the use of percolating waters for manufacturing, mining and like purposes, is within the right of the owner of the soil, whatever may be its effect upon his neighbor's wells and springs. But the owner may not wantonly or maliciously so use his own land as to injure an adjoining owner by diverting waters percolating, oozing or filtrating through the earth to the lands of the latter; and the purpose for which the water is used must be necessary, or at least legitimate.

2. A person who possesses a mere privilege or right of way in and over the land of another has no right to divert percolating waters, unnecessarily and negligently from the lands of the owner to the injury of such owner.

3. A company that has the right to construct a telephone line along and across the lands of another, may dig holes, erect poles, string wires, and do any other thing and use such agencies as are reasonably required to accomplish the work; but the exercise of such right does not require the diversion of percolating waters or the destruction or impairment of a natural spring, unless the proper making of the holes &c. would have such effect. It is for the jury to determine whether the waters were diverted, and the spring destroyed, by and through the negligence of the defendant.

4. Measure of damages stated.

(*June* 24, 1907.)

LORE, C. J., and PENNEWILL, J., sitting.

*W. W. Knowles* for plaintiff.

*Herbert H. Ward* for defendant.

Superior Court, New Castle County, May Term, 1907.

SUMMONS CASE (No. 105, February Term, 1906), for the recovery of damages arising from the destruction of a spring of water on the farm of the plaintiff in Mill Creek Hundred, alleged to have been caused by the defendant company in negligently and unnecessarily using dynamite or other explosive in making a hole near said spring for the purpose of settling one of its telephone poles.

PENNEWILL, J., charging the jury:

Gentlemen of the jury:—This action was brought by William F. Little, who has since died, against the American Telephone and Telegraph Company, a corporation of this State, for the recovery of damages which it is alleged he suffered by reason of the negligence of the said company.

Since the death of the original plaintiff, his administrator, William G. Little, has been made party plaintiff, and is entitled to recover in this action whatever the said William F. Little could have recovered.

The said William F. Little, it is claimed, was the owner

of a farm containing about sixty acres of land in Mill Creek Hundred in this County; and that there was upon said farm, and had been for many years, a natural spring of water which was of much value to the owner and particularly useful in his dairy business. That the defendant company in connection with its telephone business, settled a pole about six or seven feet from said spring, and in making the hole in which the pole was to be placed, negligently and unnecessarily used dynamite or other explosive, and thereby completely destroyed the spring. That the spring had uninterruptedly furnished a good and sufficient supply of fresh water for many years, but since the explosion which was caused by the company in preparing the said hole, the spring has been dry and useless, to the great inconvenience and detriment of the said William F. Little.

The defendant company denies any liability to the plaintiff, and claims (1) that it did not use dynamite or any other explosive in making the hole near the spring, but that on the contrary the hole was prepared in the usual way, with ordinary care and without any negligence at all; (2) that the water used by the plaintiff's intestate was supplied during a part of the year entirely, and during the remainder of the year, in part, from sources other than the spring, and that the spring was, during certain months of the year, dry, and all the time insufficient; (3) that the spring, even though it was impaired or interfered with, could have been easily adjusted so that the flow of water therefrom might have been renewed, but notwithstanding that fact the plaintiff failed to adjust or reclaim the same; (4) that even though the hole was blasted by explosives, which the defendant denies, and the spring thereby destroyed or impaired, yet inasmuch as the spring was fed or supplied by water that percolated through the soil, the defendant had a legal right and express authority to make the hole at the exact place it was made, in any manner and by whatsoever means it chose, under the terms of a contract made with the said William F. Little and bearing date October 18, 1905.

The said contract was admitted in evidence, and is as follows:

"$9. Received of the American Telephone and Telegraph Company of Delaware Nine-Hundredths Dollars in consideration of which I hereby grant unto said company, its successors and assigns the right, privilege and authority to construct, operate and maintain its lines of telephone and telegraph including the necessary poles, wires and fixtures upon, over and across the property which I own or in which I have any interest, in the Mill Creek Hundred County of New Castle and State of Delaware, and upon and along the roads, streets or highways adjoining the said property, with the right to permit the attachment of the wires of any other company, and the right to trim any trees along said lines so as to keep the wires cleared at least eighteen inches, to erect and set the necessary guy and brace poles and anchors and to attach thereto and to trees the necessary guy wires; said sum being received in full payment therefor and for the right to cut down such trees as may interfere with the lines, poles to be planted on my property as now located. Witness our hands and seals this eighteenth day of Oct. A. D. 1905, at Marshallton, Del.

Witness

"H. Ellsworth Simpers        Wlliam F. Liittle (l. s.)
S. M. Donnell                    Mary Little        (seal).
Approved C. D. M. Cole
                    *Attorney.*

Register No. 92872."

The defendant company therefore contends (1) that the plaintiff was not injured through its negligence; and (2) if any injury was sustained it was but slight, or at least very much less than the plaintiff claims.

It is the duty of the Court to instruct you as to the law applicable to the case, but it is the province of the jury to determine all questions of fact, governed of course by the law as we shall state it.

The question of law involved in this case, and upon which we are asked to charge you, is this: Is the defendant company —which, under an agreement with William F. Little, the absolute owner of the land, had the right or privilege of digging the hole in

question—liable to the plaintiff in this action, if the hole was so negligently and carelessly made as to destroy or injure a spring on the plaintiff's land which was supplied from water that percolated or oozed through the soil?

And the question of fact is: Was the hole so negligently made by the defendant as to injure the plaintiff? For it is not denied that the company had the right to make the hole, but it is denied that it was done with due care.

The defendant insists that under the law negligence does not constitute the basis of an action for an injury caused by the diversion of percolating water, and that damages cannot be recovered therefor. That there are no correlative rights between adjoining owners of land in respect to such waters, because each is entitled to all that is beneath the surface of his own land, and can do as he pleases upon his own property so long as he does not interfere with any actionable right of his neighbor. That a person having a right of way over the land of another, such as that given to the defendant in this case, has the same power and is in the same position, within the limits of his right of way, as an owner of the soil.

It is not necessary for the purposes of this case that we should consider the question of correlative rights between adjoining owners of real estate as to percolating waters. It may be admitted that the authorities generally hold that in the absence of express contract, and a positive authorized regulation, the use of percolating waters for manufacturing, mining and like purposes is within the right of the owner of the soil, whatever may be its effect upon his neighbor's wells and springs.

In the case of *Action vs. Blundell*, 12 *M*. & *W*. 324, the Court said:

"Confining ourselves strictly to the facts stated in the bill of exceptions, we think the present case, for the reasons above given, is not to be governed by the law which applies to rivers and flowing streams, but it rather falls within the principle which gives to the owner of the soil all that lies beneath his surface; that the land immediately below is his property, whether it is

solid rock, or porous ground, or venous earth, or part soil part water; that the person who owns the surface may dig therein and apply all that is there found to his own purposes, at his free will and pleasure; and that if, in the exercise of such right, he intercepts or drains off the water collected from the under ground springs in his neighbor's well, the inconvenience to his neighbor falls within the description of *dumnum absque injuria*, which cannot become the ground of an action."

But notwithstanding this general principle which has been recognized in so many cases, it may be said that many Courts have also recognized the fact that even an owner may not wantonly or maliciously so use his own land as to injure an adjoining owner by diverting waters percolating, oozing or filtrating through the earth to the lands of the latter; and it has also been held that the purpose for which the water is used must be necessary, or at least legitimate. The general doctrine that recognizes no correlative rights between proprietors of adjoining land in respect to such underground waters, has to such extent, at least, been modified.

The Court in the case of *Houston & T. C. Ry. Co. vs. East*, 81 *S. W.* 279, cited and relied upon by the defendant, said, in commenting upon another case, "The Court recognized the soundness of the general doctrine, but held that as the defendant was making no legitimate use of the water, he was properly enjoined from thus wasting it."

The crucial question before us is whether the possessor of a mere privilege or right of way in and over the land of another has the right to divert percolating waters, unnecessarily and negligently, from the lands of the owner to the injury of such owner.

It may be said that in no case cited by the defendant was the question of negligence raised, nor did it appear that the diversion of the water was unnecessary. In every case all that was done by the defendant was properly done, and necessary to the accomplishment of the work authorized to be done. And in every case but two, if we remember correctly, the defendant was the absolute owner of the land upon which he worked, and therefore entitled to everything below the surface.

In one of the excepted cases, the *New Albany and Salem R. R. Co. vs. Peterson*, 14 *Ind.* 112, the defendant had but a right of way, it is true, but the question of the right of a person having such a right of way over the land of the plaintiff was not involved. The injury to the plaintiff's well was caused in making excavations for a railroad bed, by drawing or cutting off the underground springs or fountain which supplied the well. But the roadbed was not on the land of the plaintiff, and no part of his property was appropriated for the use of the road. And in the statement of facts filed in the case it was agreed that the damage was caused by the construction of the road in the usual and proper manner of constructing such roads, *doing no unnecessary damage.* The Court did say in that case that "the railroad company, for the purpose of constructing their road, have the same right to excavate, within the limits of their right of way, that a private individual would have to dig upon his land for any purpose; and we know of no statute or principle that would hold them liable for any injury such as that complained of, beyond the liability of a natural person for a like injury."

But it will be noted that in this case there was no charge of negligent digging, and it was not done on the land of the plaintiff.

The other case which involved a right of way, and which resembles the case before us more closely than any other cited by the defendant, is that of *Hougan vs. Railroad Co.*, 35 *Iowa* 558, 14 *Am. Rep.* 502. In that case the plaintiff had granted to the defendant railway company " the right of way over and through his land for all purposes connected with the construction, use and occupation of its railroad ". The Court said: "In the absence of malice or wantonness, the rule is well settled that the owner in fee may, in the reasonable use of his land, obstruct or divert the flow of such water, even to the injury of his neighbor's land, without being liable in damages therefor—*damnum absque injuria;* a rightful use of his own property, which he may enjoy although thereby he may prevent his neighbor from having as full a benefit as otherwise might flow to him."

And continuing, the Court said: "But the defendant in this case is not the absolute and unqualified owner, or owner in fee, of the land whereon the well was dug.  The defendant, however, is owner, by grant from plaintiff, of "the right of way over and through the land *for all purposes connected with the construction, use and occupation* of its railway.  We have not been referred to, nor have we been able to find, any case deciding this question.  Upon principle it is very close, and yet we find ourselves agreed in holding with the learned judge who decided the cause below, that, under the terms of the conveyance and the facts of the case, the defendant had the legal right to dig the well, and cannot be enjoined from using the water therefrom for railway purposes."

It is true that the Court in that case, while not free from doubt, held that the defendant could not be enjoined from digging its well, because it had the legal right to do so.  But it will be observed (1) that the Court recognized the doctrine that even an owner may not obstruct or divert percolating waters except in the reasonable, as well as the rightful, use of his land; and (2) it does not appear that the defendant was guilty of any negligence in digging its well.

*Farnum* in his work on "*Waters and Water Rights*", at *Sec.* 936, cited by the defendant, says:  "The rule that one may make such reasonable use of his own property as he chooses, regardless of the effect on the percolating waters, operates with full force although the effect is to destroy a spring on a neighbor's land, unless the spring is supplied by water flowing in a known channel."

This text writer, therefore, recognizes that even an owner's use of his own land, with respect to such waters, must be reasonable.

There is no doubt that the owner of a right of way over the lands of another has the same right to use the land as the owner would have, so far as is necessary to accomplish the purpose for which the right of way was given.   But he is not the owner of the soil, and has but a qualified or limited right therein.  It would seem unreasonable to hold that he could so use that right as un-

necessarily or negligently to injure the property of the owner whether such property be located in or upon the soil. In the Indiana case already referred to, the Court, in referring to the case in 35 *Iowa* said: "The other question, upon which the Court was more doubtful, viz, whether or not such a company with only a right of way over the land, has the right to thus draw the water from it, is not here involved."

In cases where the right of an adjoining owner to divert percolating water was conceded, the Courts based their opinion upon the fact that the defendant was the owner of the soil and therefore had a right to use it as he pleased; that an owner of soil may divert percolating water, consume or cut it off, with impunity. It is the same as land, and cannot be distinguished in law from land. So the owner of land is the absolute owner of the soil, and of percolating water, which is a part of, and not different from the soil

*Pixley vs. Clark*, 35 *N. Y.* 520.

While this broad principle has been modified to some extent, as we have seen, and made to conform to another well-settled rule which holds that one person must so use his own property as not unreasonably to interfere with the rights of another, it is manifest that ownership of the land confers rights and powers with respect to percolating waters thereon which cannot be claimed by a person who enjoys a mere right or privilege in said land, unless the excercise of such right or privilege necessarily involves the diversion of the waters.

In the case we have to determine the right which the defendant company had secured from William F. Little was to construct a telephone line along and across his land. This necessarily included the right to dig holes, erect poles, string wires, and do any other thing reasonably required to accomplish the construction of the line. But the exercise of the right conferred did not require the diversion of the waters or the destruction or impairment of the spring unless the making of the hole, with due care, would have such effect. It is, therefore, we think, a question for the jury to determine whether the spring was destroyed

or impaired to the injury of the plaintiff's intestate, and if it was, whether it was done by and through the negligence of the defendant.

We must, therefore, decline to instruct you to return a verdict for the defendant.   In our opinion the case should be decided by the jury upon the evidence adduced.

Inasmuch as this case is based upon the negligence of the defendant, we say to you that the plaintiff must recover by reason of the negligent act which he has alleged, or he cannot recover at all.

Negligence is never presumed, but must be proved.   And the burden of proving it rests upon the plaintiff.

Negligence may be defined to be the want of reasonable care, that is, the failure to use such care as an ordinarily careful and prudent man would use under the circumstances.

In order that the plaintiff may recover at all in this case, you must be satisfied from the evidence, (1) that William F. Little did sustain some injury; (2) that such injury was caused by the destruction or impairment of the spring in question; (3) that the spring was destroyed or impaired by the negligent act of the defendant company.

If you believe that William F. Little was not injured by the destruction or impairment of the spring, as he has alleged; and even though you should belive that he was so injured, but are not satisfied that the injury was caused by the negligence or carelessness of the defendant, the plaintiff could not recover.

Under the agreement made by William F. Little with the company, the latter had the right to make the hole near the spring in the construction of its telephone line, and to use such means and agencies as were reasonably necessary to accomplish the work.   If it used only such means and agencies it would not be liable in this action, and the plaintiff could not recover.

Where there is a conflict of testimony, as there is in this case it is the duty of the jury to reconcile it if they can, but if they cannot, they should give credit to that which they think is most

reliable, and most entitled to belief, under all the circumstances as disclosed by the evidence.

If you shall find for the plaintiff your verdict should be for such an amount as would reasonably compensate him for any injury that William F. Little received from the loss of the said spring caused by the negligence or carelessness of the defendant company; and in estimating the damages for such injury, if any there be, you may consider the diminished value of the farm occasioned by the destruction or impairment of the spring through the defendant's negligence.

Verdict for plaintiff for $900.00