173 A.2d 344 (1961)
Frank L. MACARTOR and June D. MACARTOR, his wife, Plaintiffs,
v.
GRAYLYN CREST III SWIM CLUB, INC., a Delaware corporation, Defendant.
Court of Chancery of Delaware, New Castle.
July 6, 1961.
H. Albert Young and Bruce M. Stargatt of Morford, Young & Conaway, Wilmington, for plaintiffs.
*345 Frederick Knecht, Jr., and Harvey B. Rubenstein, Wilmington, for defendant.
SEITZ, Chancellor.
The parties in this case are neighboring landowners contesting their respective rights to a supply of what the parties agree is percolating underground water. Defendant has moved to dismiss the first three causes of action. Plaintiffs have countered with a demand for summary judgment in the first cause of action.
In their first cause of action plaintiffs allege that they are the owners and inhabitants of a residential dwelling located near a suburban area known as Graylyn Crest III. Plaintiffs in the past have supplied their household water needs from a well on their property. The well has a depth of approximately six feet. In February 1960 defendant corporation was organized for the purpose of constructing a swimming pool and other recreational facilities for the benefit of members of the residential development. Use of the facilities was allegedly to be restricted largely or exclusively to the residents themselves. In the Spring of 1960 defendant purchased a tract of land near plaintiffs' home on the opposite side of an intersecting road. It then proceeded to sink a well 170 feet into the ground in order to obtain the use of the subterranean waters. By laying down a connecting pipeline, defendant could have obtained the services of a suburban water company. Instead it chose to use the water beneath its land. Plaintiffs allege that the swimming pool alone has a capacity of approximately 200,000 gallons.
On July 7, 1960, defendant began its pumping operations. The following day plaintiffs' hitherto faithful well ran dry. In response to a complaint from plaintiffs certain of defendant's officers allegedly took the position that the dryness of the well was not causally related to defendant's pumping. On defendant's suggestion Dr. John J. Groot, the State Geologist, was called upon by both parties to determine impartially the causal relationship between defendant's pumping and plaintiffs' loss of water. Both before and after the rendering of Dr. Groot's report defendant allegedly refused to aid plaintiffs in obtaining an alternate source of water. After learning of the report, defendant arranged to have the water company supply the necessary water and laid down a portion of the required pipe, but the effort allegedly was abandoned for financial reasons. Dr. Groot's report expressed the conclusion that the wells of the parties were hydrologically connected and were drawing from the same water source.
In the first cause of action plaintiffs allege that defendant's conduct has been, and continues to be, wrongful, unreasonable, and unnecessary. In the third cause of action, plaintiffs have incorporated their previous allegations and appended the charge that defendant's conduct has been willful, wanton, and/or malicious. The second cause of action is merely a statement of damages allegedly suffered by plaintiffs and adds nothing to the complaint. Plaintiffs demand that defendant be permanently enjoined from drawing on their source of water or in the alternative that defendant be required to provide a permanent alternate source. Plaintiffs also demand both ordinary and exemplary damages.
I first consider defendant's motion to dismiss.
The issues presented are almost without precedent in the decisions of the Delaware courts. Moreover, there were no decisions in the British courts on the subject of subterranean waters at the time of the separation from the Crown. This court is not bound by the later English common-law rule of so-called absolute ownership. Under the English rule an owner has the absolute right to use percolating water without regard to the effect on his neighbors.
In the United States, in the absence of binding precedent, courts have adopted rules which seem best suited to the hydrological *346 conditions prevailing in their respective jurisdictions. The result has been a proliferation of doctrines parading under a variety of titles. A common thread binding these decisions is the outright rejection of the English rule of absolute ownership. The American authorities reflect a number of gradations in determining the extent to which one landowner may use water filtering beneath his land to the detriment of his neighbors. Some courts have merely tempered the English rule by requiring that the use be without waste and without malice. Pecos County Water Control and Imp. Dist. v. Williams, Tex.Civ.App., 271 S.W.2d 503; Rose v. Sacony-Vacuum Corp., 54 R.I. 411, 173 A. 627. California has taken a more extreme view which apparently would require a proration of waters among competing landowners without regard for reasonable use. Katz v. Wilkinshaw, 141 Cal. 116, 70 P. 663, 64 L.R.A. 236, upholding on rehearing reversal of, 74 P. 766. Between these positions lies the rather amorphous "reasonable use" doctrine which has itself been subdivided into several categories. See 11 Vand.L.Rev. 945.
The only Delaware authority which has been brought to my attention is Little v. American Tel. & Tel. Co., 6 Pennervill 374, 22 Del. 374, 67 A. 169, dealing with the rights of a landowner as against one who has a right of way across his land. The report consists only of the instructions to the jury. The court in that case expressly reserved the question of the rights of neighboring landowners. Nevertheless, it does suggest the possible recognition of certain limitations on the rule of absolute ownership.
In dealing with surface waters this court has heretofore expressed the viewpoint that the law should reflect a "practical adjustment of conflicting interests". Staats v. Hubbard, 31 Del.Ch. 41, 43, 63 A.2d 856, 857. The court must find that balance which not only will protect the rights of competing property owners but will guarantee as well the fullest beneficial use of the water resources of the state. The English doctrine of absolute ownership lacks the flexibility and reasonableness required by present day conditions. It will therefore not be adopted as the governing law here.
Taking plaintiffs' allegations to be true, do they set forth a cause of action? Defendant says they do not even under the majority American view of "reasonable use".
In the usual case, in disposing of a motion to dismiss, the court would make a determination of law on the basis of the limited record presented. Here, formulation of the governing legal principle is difficult because of the conflicting considerations involved. For example, is it relevant whether there is sufficient water for both parties under any circumstances? Moreover, although not pertinent to the motion to dismiss, the affidavits show that there are certain factual issues which could themselves be dispositive of the case, e. g., whether there is a causal connection between defendant's pumping and the dryness in plaintiffs' well. It would seem particularly desirable here to announce the governing principle of law in the light of the fully developed facts. Therefore, in the exercise of discretion, I will defer ruling on the subject matter of defendant's motion until the trial.
Plaintiffs' motion for summary judgment must be denied because the affidavits raise the material factual issue as to whether the defendant's pumping is causing plaintiffs' well to run dry.
Present order on notice.