T. E. Casteel et al., Appellants, v. Town of Afton, Appellee.

No. 44352.

62

August 1, 1939.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellants.

Kenneth H. Davenport, for appellee.

HALE, J.—On June 24, 1936, plaintiffs filed a petition, alleging that they are owners and occupants of a residence property in the town of Afton; that the said town is the owner of an adjoining property which is used as a public playground and athletic field, equipped with an electric outdoor lighting system; that the town permits various persons to hold athletic contests and games on said property at any time; that the playground is a nuisance; that the persons using said grounds bat, kick, and throw balls on to plaintiffs' property, knocking down and destroying gardens and plant life, and that they come on to plaintiffs' premises to retrieve balls, and while so doing break down and destroy fences, vegetables, and fruit trees. They state that persons use the grounds at night and that such

grounds are lighted, and the lights shine and reflect into plaintiffs' house; and that persons using the grounds use vulgar and profane language that can be plainly heard by plaintiffs; that plaintiffs lose their rest and sleep on account of the proximity of the public playground and the electric lighting system and the profane and obnoxious language, and that plaintiffs' health and working efficiency are jeopardized. They ask an injunction, temporary and permanent.

To the petition of the plaintiffs defendant filed a general denial. Trial was had to the court on April 27, 1937, and a decree rendered in favor of defendant. Plaintiffs appeal.

Plaintiffs' premises lie south of the railroad tracks in Afton, a town of about 1,000 population, the tract being 115 feet east and west by 200 feet north and south, facing a public street on the south. The playground lies to the west of plaintiffs' land, and extends north from the street to the railroad land, about 300 feet. This lot was not level, but was graded to make a level field. Formerly there were an old residence and some outbuildings on the ground, which were removed when the town acquired it. On the line between the two lots are portions of an old fence, and some box elder and other brush. Plaintiffs' house is about 33 feet east of the division line and 15 feet north of the east-and-west street. The part used for garden begins about 50 feet north of the house and extends to the north line of the lot. On the playground or athletic field, baseball, football, and kittenball are played—the latter at night, sometimes as often as three or four times a week. Children use it as a playground in the daytime. It does not appear from the evidence that defendant derives any revenue from the use of the ground. The attendance at the games is large for a town of that size, especially at night, and comprises men, women, girls, and boys, representative of all classes—as one witness states, "just the people of the community." While there may have been occasional instances, the complaint as to vulgar or profane language is not borne out by the evidence, most of the witnesses denying hearing such. The games were accompanied by noise, which is usual at such contests. These games were closed at 10 o'clock, whether concluded or not, and the lights turned out, although in some few instances they were not turned out until later. One of plaintiffs' witnesses mentioned one time

when the lights continued until 10:40. The plaintiffs also objected to persons sitting along their line, sitting on papers which blew into their yard, to the trespasses of boys in the daytime, and other incidental annoyances; but it does not appear from the evidence that these are of great consequence. The lights referred to are necessary to night games and would not constitute a great inconvenience to the ordinary dweller in a town.

The annoyance and damage to plaintiffs' property from balls thrown or batted, and from persons coming over to retrieve them, seems to be one of the greatest grounds of complaint, the plaintiffs claiming injury to their premises and vegetation from that cause. It appears, however, that the practice of retrieving balls has been abandoned. Although a wire backstop was put in, some balls got over the line. It is not likely that much injury is occasioned merely by the balls coming into the yard. Other annoyances are mentioned, but the principal complaints are as stated.

I. It is, of course, true that injunction will lie to restrain repeated trespass and threatened injury to real property, so as to avoid multiplicity of suits, to prevent irreparable injury, and the like. Cases cited by plaintiffs sustain this general rule.

It is likewise true that the ownership of property carries with it the obligation to so use that property that it will not be injurious to others. Cases cited by plaintiffs, among them City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; State ex rel. Woodbury County League v. McGraw, 191 Iowa 1090, 183 N. W. 593, sustain that general rule. Neither of these cases, however, bears directly upon the question in issue—the restraint which may be imposed upon the use of a public playground.

II. It is also true that the owner may always put his property to a reasonable use, dependent upon the locality, and other conditions. If the use made is thus reasonable, there is no ground of complaint.

"A person who lives in a city, town, or village must of necessity submit himself to the consequences and obligations of the occupations which may be carried on in his immediate neighborhood, which are necessary for trade and commerce, and

also for the enjoyment of property and the benefit of the inhabitants of the place, and matters which, although in themselves annoying, are in the nature of ordinary incidents of city or village life cannot be complained of as nuisances." 46 C. J., p. 669, sec. 34; McGill v. Pintsch Compressing Co., 140 Iowa 429, 118 N. W. 786, 20 L. R. A. (N. S.) 466; Bowman v. Humphrey, 124 Iowa 744, 100 N. W. 854, citing Miller v. Webster City, 94 Iowa 162, 168, 62 N. W. 648, 650. In many instances the courts have held that the interest of the owners "* * * their inconvenience and annoyance must yield to the public good, in so far as the interposition of a court of equity is concerned." Miller v. Webster City, supra, quoting from Daniels v. Keokuk Waterworks, 61 Iowa 549, 16 N. W. 705.

 III. We do not think it necessary, under the evidence in this case, to consider to any great extent the relative benefits and injuries. Each case of this nature must depend upon its own facts. Playgrounds and athletic fields, places of wholesome recreation, are undoubtedly of advantage to the health and well-being of a community, and more and more attention is being paid to their establishment and maintenance. They are generally considered desirable for the betterment of community life, in small as well as in large towns. They are not per se nuisances, though, like many other things, they can be so conducted as to become nuisances. As in many other instances, it is not so much the nature of the thing claimed to constitute a nuisance, as the manner of its use or treatment.

 But the injury complained of where annoyance and discomfort are alleged as grounds, to authorize relief, must be of such character as to be of actual discomfort to one of ordinary sensibilities. McGill v. Pintsch Co., supra; Dunsmore v. Central Iowa Ry. Co., 72 Iowa 182, 33 N. W. 456. Injunctions have in some cases been granted by the courts to restrain and prevent alleged nuisances arising from ball games on adjoining premises, with incidental annoyances. Such was the issue in Hennessy v. City of Boston, 265 Mass. 559, 164 N. E. 470, 62 A. L. R. 780, where the games were conducted for pecuniary profit. See, also, Cronin v. Bloemecke, 58 N. J. Eq. 313, 43 A. 605. But see note to the above Hennessy case in 62 A. L. R. at p. 782, with cases cited, wherein it is said that such use will be enjoined only when it results in a nuisance, or in a substan-

tial injury to the neighboring property, or in continuing trespass thereon—it is not a nuisance per se. In the case of Spiker v. Eikenberry, 135 Iowa 79, 110 N. W. 457, 11 L. R. A. (N. S.) 463, 124 Am. St. Rep. 259, 14 Ann. Cas. 175, this court held, in a case where the facts were similar to the case at bar, that the owner who permitted but did not affirmatively consent to the playing of games on his premises should not be enjoined, that the playing of baseball was not a nuisance per se against which persons living in the vicinity were entitled to equitable relief.

While the defendant in the case at bar appears to have affirmatively consented to the use of the lot, yet from the evidence as to the manner in which the games were conducted, the character of the attendance, and the slight evidence of injury to the adjoining premises from batted balls, we believe this is not a case where injunction should issue.

The district court, prior to signing the decree, in an opinion suggests some desirable changes in the management of the grounds and games, which were not embodied in the decree. The plaintiffs, while asking in their petition that defendant be enjoined from permitting, allowing, or continuing the claimed nuisance, in their argument do not ask that the court go to the extent of ordering that the athletic field be abandoned unless necessary for their protection. A court can and should do no more than require that the property be used in such manner as will not do injury to persons of ordinary sensibilities. We do not think it has been so wrongfully used, and are in agreement with the trial court that the facts do not warrant restraint by injunction.—Affirmed.

OLIVER, C. J., and MITCHELL, HAMILTON, STIGER, SAGER, BLISS, and MILLER, JJ., concur.