No. 38,196

ELINOR NEIMAN, MRS. JESSIE BISHOP, ALICE NEIMAN and HELEN NEIMAN, *Appellees*, v. COMMON SCHOOL DISTRICT No. 95, BUTLER COUNTY, STATE OF KANSAS, and FRED HILL, T. T. ZIMMERMAN and C. W. STARK, as Members of the School Board of Common School District No. 95, Butler County, State of Kansas, *Appellants*.

(232 P. 2d 422)

Opinion filed June 9, 1951.

*J. B. McKay,* of El Dorado, argued the cause, and *James B. McKay, Jr.,* of El Dorado, was with him on the briefs for the appellants.

*L. J. Bond,* of El Dorado, and *Byron Brainerd,* of Wichita, argued the cause, and *R. M. Bond,* of El Dorado, and *Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Lawrence E. Curfman,* and *William C. Kandt,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action to enjoin the defendants from permitting the use of or making available to any organization or group of persons the athletic field of the school district which is not directly or entirely connected with the athletic program of the grade and high school maintained by the defendant school district, or the use thereof in any manner that will deny plaintiffs the reasonable enjoyment and occupation of their property. The appeal is from an order of the court overruling defendants' motion to set aside the temporary injunction. The facts disclosed by the record may be stated in a general way as follows: The city of Whitewater is a city of the third class (population 515 in March, 1949). School District No. 95 is a common school district, the territory of which includes the city of Whitewater and adjoining land. It maintains a grade school and a high school in separate buildings. In April, 1924, the School District acquired the title to the west half of Block 1 in a described addition to the city to use as an athletic field for its school activities. Several years prior to 1948 the athletic field was used for playing soft ball games at night and lights were installed. The home plate was located near the southwest corner of the field. By the spring of 1948 quite a little enthusiasm had grown up for the playing of soft ball and as many as four teams were interested in playing. The field as it existed was not regarded by the players as a very good place to play and they talked with the school board about it, with the result that the higher ground at the north end of the field was cut down about eighteen inches and the dirt moved south to the lower part of the field; the area for the diamond was leveled; the home plate was changed to the northwest corner of the field, and a back stop about twenty feet high was erected twenty feet south of the north line of the field and twenty feet north of the home plate, with an awning ten feet high running out toward first and third bases. Flood lights were

installed on the west side of the field directed east and on the north end of the field directed south, and a public address system, with a loud speaker, was installed, over which the progress of the games was announced. All of this was done without expense to the school district.

The plaintiffs, four sisters, own the old home residence situated north across a street sixty feet wide, which has no name and the used portion being only the width for an automobile track. The house is a large two-story building with ten rooms, and it is 114½ feet to the backstop from the south side of the house. Upstairs there are four bedrooms with south exposures and on the first floor the kitchen and dining room are on the south side of the house. A grass yard from the south of the house to the used portion of the street was used by them of an evening in the summertime as a sitting place and where their friends called to visit. One of the plaintiffs has taught school in Arkansas City for thirty years and lives in Whitewater in the summertime. Another has been on the staff of the Central High School in Tulsa for twenty-five years and always lives in Whitewater for one or two months in the summer. The other plaintiffs live in the home and one of them has worked in the bank in Whitewater for twenty-five years. The other has served on the library board, as chairman of the township chapter of the American Red Cross, and is interested in church work.

In their petition, in addition to formal matters, plaintiffs stated the facts constituting their cause of action with some repetition and in more detail than is stated here, but in substance as follows: That on some date unknown to them the defendant school district, through its officers or board, "contrary to law," permitted a group of persons to use its athletic field during the summer or school vacation months, the exact nature of the agreement or permission being unknown to plaintiffs but being well known to the officers of the defendant school district; that the group of persons and its use of the athletic field is not connected with or any part of the athletic program of the grade or high school maintained by defendant, "nor a public use in any manner," but such use is a personal use to such group of persons.

That the groups of persons, at divers and several times weekly during the summer or school vacation months, conduct baseball games or exhibitions on the athletic field which attract crowds

of considerable size; that they have located home base near the northwest corner of the field; have erected and maintain flood lights sufficient to illuminate the major part of the athletic field and plaintiffs' adjacent property; have erected and maintain a public address system sufficiently powerful to be heard a considerable distance; have failed to provide sufficient parking space for vehicles of those who attend the games, and have worked the surface of the athletic field so that the soil is loose, porous and dusty, so that the prevailing southerly winds carry clouds of dust upon and over plaintiffs' property; that the address system is of sufficient strength to cause plaintiffs considerable annoyance, to break their rest, interfere with their sleep, and to disturb the reasonable use and enjoyment of their property while it is operated; that the lights are maintained in a way to illuminate their property to the extent that they are unable to sleep or rest or reasonably to enjoy the use and occupancy of their property while the baseball games are being conducted; that vehicles are parked about plaintiffs' property in such a manner as to deny plaintiffs reasonable access to or egress from their property; that persons attending the games have trespassed upon plaintiffs' property, have parked vehicles thereon, and that men and women have indiscriminately trespassed upon plaintiffs' property and have used the same in lieu of adequate toilet and sanitary facilities; that because of the working of the athletic field dirt and dust therefrom are constantly being carried upon plaintiffs' property in such a manner as to deny plaintiffs the beneficial use of the property.

That for the reasons above stated plaintiffs have been prevented from the reasonable and necessary use and enjoyment of their property, have suffered damages to their property and the value thereof, for which they have no complete remedy at law, and that they will continue to be so damaged as long as the athletic field is so used.

The prayer of the petition was that the defendant school district and its officers be enjoined from permitting the use of the athletic field to any organization or group of persons which is not directly and entirely connected with the athletic program of the grade and high schools maintained by the defendant, or the use thereof in any manner that will deny plaintiffs the reasonable use, enjoyment and occupancy of their property; that a temporary injunction be issued immediately and a permanent injunction issued

upon a full and proper hearing of plaintiffs' petition on its merits, and that plaintiffs recover their costs and have such further relief as the court may deem just and equitable.

This petition was duly verified and was presented to the court *ex parte* on May 26, 1950. Upon the consideration of the petition, "and after hearing the evidence in support thereof," of which no record was taken, the court found the temporary injunction should be issued and would be effective on the filing of a bond by plaintiffs as required by law in the sum of $1,000. Upon the filing of such bond the court ordered, adjudged and decreed that the defendant school district and its officers "be and it and they are hereby enjoined from permitting the use of the athletic field owned by" defendants . . . "to any group or organization which conducts or proposes to conduct any activity whatsoever in connection with baseball games or exhibitions or to any other group or organization using or proposing to use said athletic field for any other purpose"; and further ordered, adjudged and decreed that the defendant school district and the officers thereof be and it and they are hereby ordered to deny the use of "said athletic field to any group or organization who use or propose to use said athletic field as above set forth."

On June 2, 1950, defendants filed a motion to vacate and set aside the temporary injunction for the reason that it was granted without notice and was granted improvidently, erroneously and without sufficient cause; that it does not appear in the petition that plaintiffs are entitled to the relief demanded; that the relief demanded does not consist in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce injury to the plaintiffs; that defendants are not doing or threatening or about to do, or procuring or suffering to be done, any act in violation of plaintiffs' rights respecting the subject of the action, or tending to render any judgment which may be rendered ineffectual, and that the temporary injunction in terms enjoined the use of the athletic field at any time for any purpose or under any circumstance and is an unwarranted and an unjustified interference with the proper and lawful activities of the defendant school district and with the control of its property by its duly elected school board.

Defendants' motion to vacate the temporary restraining order came on for hearing on June 12 and continued through the 15th. Defendants called a number of witnesses in support of the motion

and plaintiffs and other witnesses testified on their behalf. Plaintiffs requested the court to make findings of fact and conclusions of law, whereupon the court took the matter under advisement until June 23, at which time it filed findings of fact which may be summarized as follows:

The findings stated the location of the property of the respective parties, found plaintiffs had owned their property a long time before defendants had acquired the athletic field in April, 1924, and found the tract was acquired by the school district to be used as an athletic field for school activities; that at some date not shown the athletic field had been used for the playing of ball games at night, and when first used for that purpose the home plate was located at the southwest corner of the field and lights were installed to permit it to be used at night, and that it was so used until about the year 1948, when the home plate was moved to the northwest corner of the tract and the land was graded so that all grass and turf was removed from a portion of it, and during the summer months of 1948, 1949 and beginning in 1950 softball games were played on the field as laid out in 1948; that in the playing of the games flood lights had been installed, a loud speaker was used, and during the games balls were frequently knocked upon the premises of plaintiffs and players and others interested in the games entered upon the premises for the purpose of recovering the balls; that the games attracted large crowds and cars were parked indiscriminately in and about the playing field and elsewhere in the vicinity; that the home of plaintiffs is located 114½ feet north of the backstop on the playing field, and between the playing field and the property of plaintiffs is a 60 foot street; that prior to the games, and often after a rain, the playing field was dragged and a large amount of dust accumulated, which was blown from the field upon the premises of plaintiffs so that it was necessary to keep the windows on the south side of the home closed to keep the dust from accumulating in the house; that the bedrooms of plaintiffs are located on the south side of the house; that during the games patrons attending them often trespassed upon the property of the plaintiffs in using their toilet facilities; that the playing of softball games generally began early in the month of May of each year and continued until September; that the number of games varied from one to four a week; that the loud speaker could easily be heard for six or eight blocks and was practically in continuous operation during the playing of the games; that the playing of the games at night on

the athletic field, installation of lights, the grading of the ground, the construction of the backstop, and other improvements made upon the athletic field was done with the sanction and approval of defendant members of the school board, although no record was made of any meeting of the board where that was authorized. The removal of the home plate from the southwest corner to the northwest corner of the field was discussed at an informal meeting of the board, of which no record was made, but at which one of the members made oral objection; that plaintiffs had protested both orally and in writing to the members of the school board against the use of the field for playing softball games at night; that when the ball games are played the flood lights are turned on and they illuminate the property of plaintiffs, shining into the bedroom windows and illuminating the grounds in general to the south of the home. The court made conclusions of law as follows:

"1. The officers of the School Board of School District No. 95 have the management and control of the athletic field owned by said School Board.

"2. The said plaintiffs are entitled to the reasonable enjoyment of their property and every part thereof.

"3. The game of softball is not a nuisance per se.

"4. The playing of softball games upon the athletic field of the School District No. 95 at night wherein flood lights are used which illuminate the grounds and the rooms of the plaintiffs' house, the use of the loud speaker which can be heard for a distance of several blocks, the batting of balls upon the premises of the plaintiffs, the same being recovered by someone from the athletic field, the blowing of the dust from the athletic field upon the premises of the plaintiffs, all constitute a nuisance in fact and the plaintiffs are entitled to have the restraining order issued in the above entitled matter, insofar as it affects the playing of the softball games under the conditions above set out, continued in full force and effect.

"5. As to the use of the athletic field for high school activities the restraining order is modified so as not to include any of the high school activities on said field."

Judgment was rendered in harmony with these conclusions of law.

Defendants in due time appealed from the order of the court made May 26, 1950, granting a temporary injunction and from the ruling, order, judgment and decision made and entered by the district court on June 23, 1950, overruling and denying defendants' application to vacate the temporary injunction and continuing the temporary injunction, as modified, in effect, and from the findings of fact and conclusions of law, and from each and every ruling, order, judgment and decision made and entered by the district court.

Appellants contend the court erred in granting the temporary injunction; in admitting and considering incompetent, immaterial and improper evidence; in its findings of fact and conclusions of law; in overruling and denying defendants' application to vacate the temporary injunction, and in continuing the temporary injunction, as modified, in effect.

These findings are incomplete or inaccurate in at least the following particulars: The finding that the tract was purchased as a field for school activities is incomplete. While it was used for school activities it was also used as a general athletic field for any group in the city who desired to use it. The finding that cars were parked indiscriminately in and about the playing field and elsewhere in the vicinity is inaccurate to the extent there was no evidence that any cars were ever parked in the playing field, and the parking of the cars in the vicinity would not constitute a cause of action for injunction unless they were parked about plaintiffs' premises so as to be objectionable. The allegation in the petition that they were so parked as to deny ingress or egress to plaintiffs' premises was never established by proof, and all parking of cars in the street between plaintiffs' premises and the athletic field was stopped early in 1950. The finding that the patrons of the game often trespassed upon plaintiffs' property in using the toilet facilities was inaccurate at the time the petition was filed, for one of the plaintiffs, Mrs. Bishop, testified: "I don't know of any trespassing that has occurred this year." There was other evidence to the same effect.

We are first confronted with appellees' motion to dismiss for the reason that the specifications of error contained in appellants' abstract refer only to trial errors which may not be raised on appeal in the absence of a motion for a new trial. The point is not well taken. A motion for a new trial is not needed for a review of the hearing upon a motion. (*Federal Land Bank v. Richardson,* 146 Kan. 803, 73 P. 2d 1005; *Mayall v. American Well Works Co.,* 149 Kan. 781, 89 P. 2d 846.)

We also note the contention of appellees that the appellants are bound by the findings of fact and conclusions of law made by the trial court. All the cases they cite on that point are cases in which there has been a trial on the merits. No such trial has been had here. There is no provision in our statute for the trial court to make findings of fact and conclusions of law upon the hearing of a motion. The findings of fact and conclusions of law made may be

helpful, but they are incomplete in some respects and inaccurate in others. We think we can best dispose of the case by taking up each of the questions relied upon by plaintiffs and examining the record with respect to them.

First we note, if it makes any difference, that the games played were softball games and not baseball games, as alleged in the petition. The allegation in the petition that the athletic field was being used for a private purpose and that the use made of it was not "a public use in any manner," was thoroughly disproved by the evidence. The testimony was that:

"After the acquisition of the ground it has been used for soft ball and track purposes and for baseball. Shortly after the ground was acquired a city league made up of four or six teams in the city played twilight baseball there . . . Some of the organizations which have so used the field were the city baseball league, the younger boys, the boy scouts and the boys baseball organization. The field has always been open to anyone that wanted to use it . . .

"Four or five Whitewater teams play there during the course of the season. The groups which play there are the boys scouts, the grade school group, older men and the high school, and young fellows just out of high school. Most of the players are school boys. Some adults play on the field. There is no other field in the vicinity which can be used for playing softball.

. . . . . . . . . . . . . .

"Most of the high school boys play on the regular team, the rest of the teams are grade school age. There are four or five different teams which use the field. There is no other athletic field around Whitewater."

None of this evidence was controverted. A number of the witnesses called by the plaintiffs or by the defendants testified that an athletic field for the playing of the games, such as were played there, was beneficial to the communiy and its citizens, and that no other similar athletic field existed in Whitewater. There was testimony about some talk or efforts to raise money by contributions to buy another tract of ground and fix it up for an athletic field, but because of the estimated expense it never got further than the talking stage.

The allegation in plaintiffs' petition that the value of their property had been decreased by the playing of the softball games in the athletic field across the street from their property was not established by any proof. Indeed, the only evidence directly bearing upon the point was to the contrary. It is true that several witnesses testified they would not like to live in the property when the games were being played where they were. Of course, some people would not like to live next to a church, or to a school ground, or to a gen-

eral store, or to a filling station or garage. That fact does not prevent the owners of those properties from using them for the purposes mentioned unless they are used in such a way as to cause specific damage or an actionable private nuisance to the adjoining owner.

The allegation in plaintiffs' petition that the school board, in permitting the group to fix up the athletic field as it was done in 1948, acted "contrary to law" is futile and G. S. 1949, 72-1033 appears to give ample authority to the board for its action. More than that, so far as this case is concerned, it is no concern to plaintiffs. If an inquiry is to be made as to whether the school board exceeded its legal authority it should be made in an action by the state on the relation of the attorney general or the county attorney. The plaintiffs here are concerned only with whether what was done created a nuisance as to them.

However, a school district, being a quasi-public corporation, has no more right to create and maintain a situation that is a nuisance to private individuals than a municipal corporation would have (*Jeakins v. City of El Dorado,* 143 Kan. 206, 53 P. 2d 798), or a private corporation (*Helms v. Oil Co.,* 102 Kan. 164, 169 Pac. 208). In all cases of this general character which have been called to our attention the court looked to the particular things that were done, and which were alleged to have constituted a nuisance, to see if they really did so, and that if they found a nuisance had been created, to abate or enjoin the continuance thereof. (See, *Casteel v. Town of Afton,* 227 Ia. 61, 287 N. W. 245; *Warren Company v. Dickson,* 185 Ga. 481, 195 S. E. 568, where the questions are thoroughly considered.)

We turn now to the specific complaints made by the plaintiffs. They complain of the public address system. The testimony was that this was sufficiently loud that it could be heard six or seven blocks, or all over town. We can very readily see how plaintiffs could be annoyed by that continuing through a ball game several nights a week, and it is our judgment that it should be enjoined.

They complain of the dust caused by the grading of the field, which was done by removing the grass from it, and by the dragging of the field after rains and before the games. Counsel for appellants suggest that the annoyance from the dust has been greatly exaggerated. It is true the evidence discloses that the soil in that vicinity blows easily; that the road along E street, directly west

of plaintiffs' property and of the athletic field, was very dusty before the black top was put on a few years ago, and that it is likely plaintiffs have some dust other than that created by the working of the playing portion of the athletic field. However, the evidence is quite convincing that the dust from the athletic field was a real nuisance to plaintiffs. It is an artificial condition created by the improvement and use of the athletic field. We think that should be enjoined. This probably means the resodding or sowing of grass on that portion of the field which has been made bare, but whatever is required should be done to relieve plaintiffs from this nuisance.

We are not greatly impressed with the complaint of the plaintiffs about the flood lights. Those on the west side of the athletic field are directed to the east; those on the north side to the south; so no light is directed toward plaintiffs' residence. The lights are bright, some of them being 1,000 candle power and some 1,500. The number of them is not disclosed. They do light up the playing field and some light reflects from the playing field to the residence of the plaintiffs. The plaintiff, Mrs. Bishop, testified: "Ten o'clock is earlier than my usual bed time." We think any substantial objection to the lights will be avoided if the games are closed early enough so that the lights can be turned out by ten o'clock at night. This may require the games to be started a little earlier than has been the custom, or the playing of fewer than the regular innings of the game, but this will not seriously handicap their operation. Defendants should be enjoined from permitting the lights to be used after ten o'clock at night.

Plaintiffs have made much of the trespassing upon their property by those who attend the games, but the record clearly shows that this trespassing ceased early in 1950 and that none of it was existing at the time of the filing of the petition in this case. No doubt that was a nuisance while it lasted, but the injunction should have gone only to situations which existed when the action was filed.

With respect to the crowds, Mrs. Bishop testified: "The crowd is large, there is tooting of horns, and lots of cheering and calling back and forth. . . . The crowd is not any different from any crowd at a ball game. . . . Whitewater is an orderly and peaceable town, and I have seen no conduct on the part of the spectators or participants in these games at which to take offense." Another plaintiff, Helen Neiman, testified: "The noise from the spectators

was the usual noise from such recreational facilities. Whitewater crowds are well behaved. I believe the young people should have recreational facilities."

Plaintiffs complain about boys going on their property to retrieve balls. This was so trivial that it was not mentioned in the petition. There was evidence that at times when a ball would be knocked or thrown so that it went on plaintiffs' land several children would run to find it, and if they could not find it at once they would come back the next day. But in the evidence it appears that method of retrieving balls had changed so that one boy scout was given the duty of retrieving a ball which went back of the backstop; that the ball would have to go as much as eighty feet back of the backstop before it would be on plaintiffs' premises, and that not more than one or two in a game went that far. There is no contention that the balls struck the windows or the house or did any other damage to the property.

The trial court correctly found that the officers of the school board have the management and the control of the athletic field. This is in harmony with our statute (G. S. 1949, 72-1033). It then erroneously enjoined the school board from permitting the use of the athletic field to any group or organization which conducts or proposes to conduct any activity whatsoever in connection with baseball games or exhibitions, or to any other group or organization using or proposing to use the athletic field for any other purpose except the use of the athletic field for high school activities.

The result is that the judgment of the trial court must be modified by setting aside the temporary injunction as made, and also setting aside its order continuing it in force as modified, and the injunction should be granted against the use of the address system at the ball games and against the continuance of using the field so as to produce dust which blows upon plaintiffs' property, and against the use of the flood lights later than 10:00 o'clock p. m.

It is so ordered.

PARKER, J., concurs in the result.

WEDELL, J. (dissenting): Limitations of time preclude full treatment of my views in this case. In my opinion the judgment of this court does not grant appellees the relief to which they are entitled under the facts disclosed by the record and the findings of the trial court.

PRICE, J.; concurs in this dissent.