FRANK L. MACARTOR and JUNE D. MACARTOR, his wife,
Plaintiffs,

*vs.*

THE GRAYLYN CREST III SWIM CLUB, INC., a Delaware corporation,
Defendant.

*New Castle, January 14, 1963.*

*Bruce M. Stargatt,* of Morford, Young & Conaway, Wilmington, for plaintiffs.

*Frederick Knecht, Jr.,* of Knecht & Conte, Wilmington, for defendant.

SEITZ, Chancellor: This is the decision after final hearing on plaintiffs' application to enjoin defendant Swim Club from further use of its well, to enjoin defendant from using its loud speaker altogether or at a greater than reasonable level and for damages in the sum of $73.49.

This case raises in capsule form very important problems of allocation of rights in percolating water. It is not susceptible of an easy solution, because the controlling test is "objective" reasonableness.

Plaintiffs live on the east side of Marsh Road in Brandywine Hundred and have for their water supply what I will call a bricked well 4 feet 7 inches long, 2 feet 11 inches wide, and just over 4 feet deep. The "normal" water depth is of course much less than the height of the well. The defendant leased land [1] directly across Marsh Road but back about 150 feet from the road and constructed thereon a swimming pool with accompanying facilities. The parties' wells are about 200 feet apart. Defendant proceeded to sink a well of approximately 200 feet, which passed through almost solid rock below the 42 foot level, at an expense of about $2,500. The first 42 feet of the well are encased in steel.

Defendant began pumping operations from its well on the afternoon of July 7, 1960 for the purpose of filling its pool. The plaintiffs' water fell below the intake pipe at least by the next morning. There followed a series of disagreements resulting in the filing of this action. At the motion stage this court rejected the so-called English rule of absolute ownership of percolating water. The court stated that it preferred to adopt an appropriate legal principle in the light of the

---

1. For purposes of this dispute defendant will be treated as a land owner.

fully developed facts. *MacArtor v. Graylyn Crest III Swim Club, Inc.*, 40 *Del.Ch.* 53, 173 *A.2d* 344.

The trial resulted in one important change in the record from that presented at the motion stage. At the motion stage, it was contended on affidavit by plaintiffs' expert, and denied by defendant's expert, that there was a hydrological connection between the two wells. At the trial defendant's expert stated that he then agreed with plaintiff's expert that such a connection did exist. Thus, as strange as it may seem, in view of their relative depths and the other factors mentioned, both wells are drawing from a common pool or reservoir of water.

The defendant's swimming pool requires about 240,000 gallons to fill. It appears that defendant's pump must run constantly for about three weeks to fill the pool. I find that this results in plaintiffs' well being unusable for at least the same period. It also would appear that the amount drawn out by defendant intermittently for miscellaneous pool use during the swimming "season" continues to render plaintiffs' well unusable. Are plaintiffs entitled to relief under the circumstances?

The answer to the question posed first requires the court to determine the applicable legal principle. The doctrine of "reasonable user" commends itself here. This rule permits the court to consider and evaluate the various factors on both sides and arrive at an "accommodation" of the conflicting rights, if that is feasible. It also permits the court to consider the intentions of the offending party and his actions subsequent to the discovery of the consequences of his use of the water.

Before examining the factors relevant to the application of this announced legal principle, certain important preliminary observations are in order. First of all, plaintiffs are not entitled to have the defendant restrained from using its well merely because it can purchase the water commercially at a reasonable rate. I say this because a land owner is entitled to make "reasonable" use of the percolating water under his land. This is one of his "bundle of sticks". Indeed, defendant attempts to bring the same argument to bear against plaintiffs and the court merely reiterates its position.

Nor do I think that a prior use by one party automatically preempts the water for such party merely because of such priority.

■ Nor does the fact that plaintiffs' well may be objectively marginal necessarily deprive them of relief. They are entitled to protection if their use is impaired by an unreasonable use of the water by plaintiff. The marginal nature of the well is however pertinent evidence in evaluating the reasonableness of the comparative uses both for the purpose of determining liability and for the purpose of affording relief.

■ Finally, defendant says the construction of a school and of sanitary and storm sewers next to plaintiffs' property have lowered the level of the water in the well. This is no answer to plaintiffs' claim. I say this because it appears that plaintiffs have a water supply which, even after such work they deem sufficient except when the defendant's well is being pumped.

■■ What are the facts pertinent to the reasonable user issue? It seems clear that defendant believed and was reasonably entitled to believe that the well it sank would not interfere with wells such as plaintiffs. Moreover, plaintiffs' well is objectively marginal with a weak recovery rate. In contrast, it appears that defendant's use is recreational. While such use is not to be condemned, it is not entitled to quite the same consideration as a household use. I recognize however that the comparative number of users may also be a relevant factor. So far as appears only a few property owners are apparently affected, and only the plaintiffs complain legally. Next, the defendant is withdrawing water from the land area it occupies in amounts which far exceed what would be the "normal" residential water need for such area, assuming its building density would be about the same as that which surrounds the area. Finally the defendant takes a very large volume of water in concentrated periods.

■ The foregoing factors, when considered with the balance of the record, lead me to conclude that defendant's initial use of its well was made without an awareness of its consequences on plaintiffs' well. However, after it became aware of such effect defendant's use at least during the period when it pumped to fill the pool was not unqualifiedly reasonable. Whether it will be deemed reasonable after

exploration of possible remedies, as hereinafter provided, I need not now decide.

What relief is here warranted? Certainly there are "equities" on both sides. As noted, I do not believe this case justifies a permanent injunction against the use of defendant's well. One immediately asks whether defendant could not pump in amounts and over a time period that would not result in plaintiffs' well going dry. On the record before me there seems to be substantial doubt that the schedule could be sufficiently drawn out to accomplish its purpose without being impractical at least time wise. At least this is so with respect to the filling operation.

The next suggestion that comes to mind is to consider whether plaintiffs' well could be deepened with the hope of obviating the problem. There is of course no assurance that the deepening of plaintiffs' type of well to a reasonable extent would solve the problem created by defendant's pumping. But there is testimony that a nearby similar type well of some 14 feet is adequate despite the pumping. I think the first approach to a balancing of the conflicting interests for purpose of affording relief is to deepen plaintiffs' well a reasonable distance and see what happens. This can be accomplished by an order made subject to appropriate later change.

I therefore conclude that plaintiffs' request to enjoin defendant from pumping from its well will be granted until further order of the court on the condition that plaintiffs deepen or agree to permit defendant to cause their well to be deepened to a reasonable depth with the cost to be equally divided. Plaintiffs must run the risk of permanent loss of water inherent in deepening the well. Defendant must also arrange for a substitute water supply for plaintiffs in the interim.

As an alternative remedy, if not objectionable to third parties involved, plaintiffs may elect to run at their own expense a permanent connection to the defendant's supply of water from the Suburban Water Company which they may thereafter use so long as they bear their proportion of the costs attributable to such use. If the parties accept one of the alternative remedies and the conditions applicable to it, the order will fix a time schedule and provide for a report on

the results of the work. If plaintiffs reject both alternatives or the applicable conditions, no injunction will be granted against the use of the defendant's well. If defendant rejects the conditions applicable to the remedy selected by plaintiffs, a permanent injunction against the use of its well will be granted.

I now consider the request for a permanent injunction against the playing of the loud speaker system. I conclude that the noise from the system in 1960 was legally objectionable but that the defendant took cognizance of the condition with the result that its use was not objectionable in 1961 or 1962. A problem is created because the sound setting on the loud speaker system is readily accessible to the users of the pool, and the upper reasonable volume limit is not marked. I will therefore deny an injunction against the use of the loud speaker system on the condition that defendant cause a stop to be placed on the instrument which will prevent the loud speaker switch from being moved above the agreed reasonable point. The complaint against the discharging of the starting guns during swim meets is de minimis. However, the defendants should consider alternatives under good neighbor policy.

Finally, I consider plaintiffs' claim for damages. Defendant does not challenge the amount or reasonableness of the expenses. Its defense is that it offered plaintiffs a substitute water supply which was rejected. I accept defendant's defense and decline to assess damages. Unless defendant desires to be heard court costs will be assessed against it.

Present order on notice.