448 P.2d 185 (1968)
92 Idaho 571
CORPORATION OF THE PRESIDING BISHOP OF the CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, a corporation, Plaintiff-Third-Party Defendant and Respondent,
v.
Thomas ASHTON, E.L. Berry, by and on behalf of themselves, and others similarly situated, Intervening Defendants-Third-Party Plaintiffs and Appellants,
v.
The CITY OF IDAHO FALLS, a municipal corporation, S. Eddie Pedersen, as Mayor, and Philip C. Leahy, Karl G. Page, James R. Freeman, Roy J. Keller, Gordon L. Nelson and Dale D. Parish, as Councilmen of the City of Idaho Falls, and Ray Browning, City Building Official, Third-Party Defendants and Respondents.
No. 10076.
Supreme Court of Idaho.
December 2, 1968.
Thomas C. Whyte, Idaho Falls, for appellant.
Petersen, Moss & Olsen, Idaho Falls, for respondent, Church.
*186 Albaugh, Bloem, Smith & Pike, Idaho Falls, for respondent, City.
McFADDEN, Justice.
On May 20, 1958 respondent Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints, a corporation sole, referred to herein as the Church, purchased approximately seven and one half acres of land in an area later classified as a Residential (R-1) Zone by City Ordinance 852. The property is located in a residential neighborhood in the corporate limits of respondent City of Idaho Falls, referred to herein as the City. Approximately three and one half acres of this land fronting on First Street of the City was to be used to build a church building with grounds and parking area to serve as a meeting place for two wards and one stake of the Church. The remaining four acres was used for two softball fields. At the time of the original purchase of this land, there were few homes in the area, but between 1959 and 1961 several people, some of whom are the appellants in this case, began to build or acquire residences in the Pine Acres Subdivision, which is included in the previously mentioned R-1 zone. These people inquired as to the prospective use for this tract of land adjacent to their homes, and they were advised by various real estate salesmen that the Church planned to erect a church building and a recreation field or children's playground. None of these early purchasers actually knew that the proposed recreation field would be a lighted recreation complex, as is involved here. Some of the appellants in the present case, however, purchased homes in the Pine Acres Subdivision subsequent to completion and use of the recreation field. These people, who were aware of the existence of the field before they moved into the area, testified as to their belief that use of the lighted recreational field was to be abandoned.
Before any construction work was commenced by the Church, it contacted the City building inspector on two occasions to determine what was needed to comply with the city ordinances. The Church submitted a proposed plot plan showing the area to be used by the church building and also showing two softball diamonds lighted by high intensity electric lights erected on poles. The building inspector stated that the proposed development did not violate any zoning ordinance and that no building permit was needed for the excavation work or lights, and that when the plans for the church building were ready a permit would be issued for the entire complex. The Church then commenced construction of the lighted softball fields at a cost of about $17,000.00. Finally on March 14, 1963 the plans for the church building and parking lot were submitted for which a permit was issued, but the City refused to grant a permit for the recreational complex because of commencement of the instant action.
Preliminary grading was done on the field in 1959, and in 1960 the grass was seeded. In August 1961 the Church erected 16 wooden light poles approximately 58 feet high to illuminate the area for two softball fields, hiring City employees and equipment to do the work. One softball diamond was laid out in the southeast corner of the property and another one was situated diagonally across the land in the northwest corner. Twelve of the light standards were erected around the perimeter of the playing field. Each of these poles supported four high intensity lights. Through the center field between the two diamonds, four more poles were erected, each with two banks of lights with four lights in each bank. One bank on each pole faced each diamond.
In 1961 following installation of the light poles, the Church conducted a softball tournament on this field for approximately two weeks. Games often lasted until 11:30 p.m. and several neighbors in the vicinity complained about the bright lights shining in their yards and homes. They also objected to the noise, dust, traffic, and trespassing baseballs. Most of these people lived west of this recreation field. Several appellants had their homes on lots with the back lot line immediately adjacent to the west boundary of the recreation field. Several meetings were held involving these neighbors *187 and the Idaho Falls City Council in order to examine and attempt to solve the problem. Finally, in July 1962, the City discontinued electrical service to the recreation complex. No games were held the rest of 1962 or in 1963, and it was during this time that several of the appellants in this case bought homes in the vicinity, being under the erroneous impression that the light poles were to be removed.
In August 1963, however, the Church instituted suit against the City of Idaho Falls, seeking an order requiring the City to restore the electrical power and to cease interfering with the Church's activities. The City answered, claiming that the lighted recreational complex was in violation of the R-1 zone established by Ordinance 852. Several of the neighboring landowners, who are the appellants in this case, were allowed to intervene as defendants with the City. They filed a complaint in intervention seeking relief against the plaintiff Church. Before the trial, however, a new city administration was installed and the Church and City reached an agreement whereby the Church's complaint, seeking to require restoration of electrical power to the lights, was dismissed and the lights were restored subject to a 10:00 p.m. curfew, unless a court should later establish a different time.
The intervenors then filed a third-party complaint against the City seeking an injunction to restrain the City from issuing a building permit to the Church and to order the City to enforce Ordinance 852. Thus the City was brought back into the litigation and both the Church and the City were named as third party defendants. The third party complaint alleged that the lighted recreation field was in violation of Ordinance 852 as a non-permitted use in an R-1 zone and that, in any event, the lighted field was a nuisance which should be abated. The district court, after an answer was filed and trial held on the issues framed, rendered judgment for the Church and City, from which judgment appellants have appealed.
Several problems which were initially subject to complaint have been practically eliminated. The parking lot property has been paved, eliminating most of the problem from dust. The lights which were originally out of focus have been adjusted, reducing the problem of glare from the lights. A fence has been installed by the Church, and as a result there has been little trespassing in recent years. The main problems remaining are the illumination from the high intensity lights and the noise emanating from softball games. The Church has admittedly abided by its self-imposed curfew of 10:00 p.m., but there has been some complaint concerning noise from early morning games, often starting as early as 6:00 a.m. The district court in its decree held that the use and maintenance of the field is not prohibited in an R-1 zone and that the use of the field between the hours of 7:00 a.m. and 10:00 p.m. Mountain Standard Time does not constitute a nuisance. The court therefore ordered the City to issue to the Church a certificate of occupancy and any necessary building permits for this field and denied appellant's request for an injunction. The court also ordered:
"* * * that with respect to the hours prior to 7:00 a.m. and beyond 10 p.m. Rocky Mountain Standard Time, the Defendant-Church be, and it hereby is, restrained from the use of the lighted recreational area * * *."
The judgment of the trial court is to be affirmed, except as to its reference to Mountain Standard Time. See 15 U.S.C.A. §§ 260, 260a, 263. Instead of the term "Mountain Standard Time" the decree should be modified to read "prevailing Mountain Time," so that when daylight saving time is in effect the decree will be applicable to that time.
Appellants' assignments of error present two questions for this court to decide. First, whether the term "Churches," as used in Section IV of Ordinance 852 of the City of Idaho Falls, includes a recreational complex of the size involved here or whether it is more narrowly restricted to mean only a building in which religious meetings are conducted. Assuming that the broader interpretation *188 is adopted, the second question arises, whether the use of such a field should nevertheless be enjoined as a public or private nuisance. We shall proceed to consider these questions in order.
Ordinance 852 of the City of Idaho Falls provides that single family dwellings, churches, schools, libraries, and farming and truck gardening are permissible uses in an R-1 zone. None of these terms, however, is defined in the ordinance, and other sources must be examined to determine the scope of the term "Churches." It is our opinion that a reasonable recreation facility is a permissible accessory use included within the meaning of that term. McQuillin states that:
"Where use for church purposes is allowed in a zone, uses customarily incidental or accessory to church uses may not be excluded or unduly restricted. But such incidental uses must be reasonably closely related, both in substance and in space, to the main church purpose.
"The terms, `church,' `church use,' and the like frequently are not defined with exactitude in the zoning laws." (8 McQuillin Municipal Corporations, Sec. 25.131f, pp. 412-413 (1965)).
There are no Idaho cases dealing with this specific point, but several cases from other jurisdictions have held that a church is something more than merely a building in which the actual religious services are held. Perhaps the leading case is Diocese of Rochester v. Planning Board of Town of Brighton, 1 N.Y.2d 508, 154 N.Y.S.2d 849, 136 N.E.2d 827 (1956), in which a Catholic Church desired to build a church with a parochial school and an open play field on its property. The local zoning officials denied a permit for this purpose, but the appellate court held that the decision was unreasonable and arbitrary. The court pointed out the almost universal rule that churches and their attendant uses are permitted in residential areas and that a loss of tax revenue, a decrease in property values, increased noise, or traffic are not sufficient grounds to justify excluding a church from a residential neighborhood. In this regard see also 8 McQuillin, Municipal Corporations, § 25.131f, pp. 409-413 (1965); 2 Yokley, Zoning Law and Practice, § 222, pp. 110-112 (2nd ed. 1953); Board of Zoning Appeals of Town of Meridian Hills v. Schulte, 241 Ind. 339, 172 N.E.2d 39 (1961); State ex rel. Synod of Ohio of United Lutheran Church in America v. Joseph, 139 Ohio St. 229, 39 N.E.2d 515, 138 A.L.R. 1274 (1942). Diocese of Rochester v. Planning Board, Etc., supra, is significant, as are the cases which follow, because it recognizes that the scope of the term "church" is broader than the church building itself and that activities related to the church itself are permissible in a residential area. See also Annot. 74 A.L.R.2d 377 at 403-411.
In Community Synagogue v. Bates, 1 N.Y.2d 445, 154 N.Y.S.2d 15, 136 N.E.2d 488 (1956), the court held that it was error for the lower court to uphold the refusal of a permit for a church to use its property for men's and women's social groups and for youth group activities. The applicable zoning ordinance allowed churches in residential areas to be used for strictly religious purposes. The court, however, held that these group activities were included within the usual scope of the term "church":
"A church is more than merely an edifice affording people the opportunity to worship God. Strictly religious uses and activities are more than prayer and sacrifice and all churches recognize that the area of their responsibility is broader than leading the congregation in prayer. Churches have always developed social groups for adults and youth where the fellowship of the congregation is strengthened with the result that the parent church is strengthened. * * * It is a religious activity for the church to provide a place for these social groups to meet, since the church by doing so is developing into a stronger and closer knit religious unit. To limit a church to being merely a house of prayer and sacrifice would, in a large degree, be depriving the church of the opportunity of enlarging, perpetuating and strengthening itself and *189 the congregation." 154 N.Y.S.2d at 21, 136 N.E.2d at 493.
The Indiana Supreme Court in Board of Zoning Appeals of Town of Meridian Hills v. Schulte, 241 Ind. 339, 172 N.E.2d 39 (1961), also held that a school, a priests' dwelling and a sisters' home could all be erected in connection with a church under the applicable zoning ordinance allowing churches:
"In this state it has been decided that facilities that go with the church of the particular denomination may not be excluded if the church is admittable. For example, a recreation building and playground in connection with the Meridian Street Methodist Church * * * and a `sisters' home' for the teachers in a Catholic church-school * * *." (at 42)
To the same effect are Keeling v. Board of Zoning Appeals of City of Indianapolis, 117 Ind. App. 314, 69 N.E.2d 613 (1946); Board of Zoning Appeals of City of Indianapolis v. Wheaton, 118 Ind. App. 38, 76 N.E.2d 597 (1948); Diocese of Central New York v. Schwarzer, 23 Misc.2d 515, 199 N.Y.S.2d 939 (1960).
Although none of the above cases, or any cases cited by respondent, have considered a recreational complex of the magnitude involved here as an accessory use to a church, it is our opinion that the activities conducted on this field are an integral part of the Church program and are sufficiently connected with the church itself that the use of this property for recreation purposes is permissible.
The testimony in the record is uncontradicted that the Church conducts recreational activities as an official part of its program of worship. This is not to say, however, that a church can enjoy completely unfettered use of its property just because the activities conducted thereon bear some relation to a church purpose. See for instance Sexton v. Bates, 17 N.J. Super. 246, 85 A.2d 833 (1951). It is our opinion that the reasonable use of a recreation field in connection with the activities of a church located on the property is not objectionable under Ordinance 852. However, as the court said in Community Synagogue v. Bates, 1 N.Y.2d 445, 154 N.Y.S.2d 15, 136 N.E.2d 488 (N.Y.C.A. 1956), allowing social group activities in connection with a church:
"It is true that the religious aim of strengthening the congregation through fellowship may not be permitted to be perverted into a justification for establishing a place of entertainment, such as a countryclub, but the facts clearly show that there is no such attempt here and each case ultimately rests upon its own facts." (154 N.Y.S.2d at 22, 136 N.E.2d at 493)
The question is largely one of degree. In the present case the unrestricted excessive or uncontrolled use of a recreational complex as large as the one involved here could not be justified as an accessory use to the church building itself. But with the restrictions imposed by the district court, the use of this complex is reasonable. Its use is an integral part of the L.D.S. Church program and, in our opinion, is within the scope of the term "church" as used in Ordinance 852.
Our conclusion that a recreation field, lighted or unlighted, is permissible in an R-1 zone is bolstered by the City's actions in enforcing Ordinance 852. Several former city officials testified that the lighting of parcels of land was never raised as a ground for granting or denying a building permit under Ordinance 852. Moreover, it is clear that the City has consistently interpreted Ordinance 852 to allow lighted recreation fields in R-1 zones. At the time the Ordinance was enacted, Highland Park, the home of a professional baseball team, was located in a residential zone and the use of high intensity lights there was never questioned. This use has been allowed to continue, and in addition the City has installed lighted tennis courts there. Furthermore, the City has asked at least one L.D.S. ward for permission to use a portion of its property in a residential area as a recreation field, although this particular *190 field is not lighted. Schools are also allowed in R-1 zones and like the term "churches," the term "schools" is also not defined. Nevertheless, the same City Council which enacted Ordinance 852 joined with the Idaho Falls High School to erect a large lighted football stadium adjacent to the high school grounds even though the school was located in an R-1 zone.
There are several other examples which illustrate that the City of Idaho Falls has always interpreted Ordinance 852 to allow recreation fields, whether lighted or unlighted, in R-1 zones. In 1957 or 1958 the City allowed the Hope Lutheran Church, located in an R-1 zone, to construct an unlighted softball diamond, and the City once told a Catholic Church, located in a residential area on 9th Street in Idaho Falls, that lighted tennis courts are a permissible use in that area. Moreover, in 1961 the City Council formally approved a recreational facility similar to the one in the present case at the North Idaho Falls L.D.S. Stake. That area was also in an R-1 zone, although the area was less densely settled than the area involved here. In addition to these instances the City Council in the present case clearly interpreted Ordinance 852 not to preclude the construction of this recreational complex. The Church made inquiry as to whether such lighted recreational facility would be permissible, and the City officials replied that they found no violation of the zoning ordinances.
The appellants argue that churches are universally permitted in residential areas because such areas are the quietest and least congested areas of a town. It is their position that churches are allowed there because churches are basically a peaceful, quiet and inspirational use of land, but they contend that when a church uses its land as it has here, the justification for allowing churches in residential areas disappears. In short, appellant argues that the particular use of the church's land involved here is inconsistent with the basic purpose of Ordinance 852, which they claim is to establish a normal quiet residential neighborhood. The record clearly shows, however, that the City officials have interpreted Ordinance 852 to allow the use of lighted recreational facilities in R-1 zones, even going so far as to help build the lighted football stadium at Idaho Falls High School. Given such facts, we cannot say that the recreation field established by the Church here is in violation of the general scheme for such a zone. Indeed such a use seems to us to be consistent with the general character of R-1 zones as the City officials have established them. It could be that such a use is undesirable in an R-1 zone, but that is a matter to be decided by the City zoning authorities and they have chosen to allow the use of lighted recreational facilities. There is no reason for us to override that decision.
Having, determined, then, that Ordinance 852 allows the use of this property as a lighted recreational complex, the next issue is whether such a use in a residential area constitutes either a public or private nuisance. It is settled in Idaho, as well as in other jurisdictions, that night baseball on a lighted field is not a nuisance per se. Hansen v. Independent School Dist. No. 1, 61 Idaho 109, 98 P.2d 959 (1939); Kasala v. Kalispell Pee Wee Baseball League, 439 P.2d 65 (Mont. 1968); Casteel v. Town of Afton, 227 Iowa 61, 287 N.W. 245 (1939); Neiman v. Common School Dist. No. 95, 171 Kan. 237, 232 P.2d 422 (1951).
This court stated in Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695 (1950), that
"A nuisance per se is that which is a nuisance at all times and under all circumstances. A nuisance in fact is that which is not inherently a nuisance, or one per se, but which may become such by reason of surrounding circumstances, or the manner in which conducted." (at 348, at 698 of 218 P.2d)
The game of baseball is not at all times or under all circumstances a nuisance, which is defined in I.C. § 52-101 as "Anything which *191 is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, * * *." The question presented in this case, then, is whether under the particular facts present here the use of this recreational complex for night baseball constitutes a nuisance in fact.
Hansen v. Independent School Dist. No. 1, 61 Idaho 109, 98 P.2d 959 (1939), is strikingly similar to the case at bar. There this court held that under particular circumstances of that case the game of night baseball in a residential district constituted a nuisance:
"The evidence herein is ample to sustain the contention of appellants that the use of the field in the manner in which it has been used herein constitutes a legal nuisance per accidens consisting principally of four elements, namely, the flooding of appellants' homes with excessive light; preventing or hindering sleep and rest; creation of excessive noise; trespass of balls and people, and parking of automobiles in such a manner as to greatly hinder ingress to and egress from appellants' property." (at 116, at 961 of 98 P.2d)
These elements are basically the same as those about which appellants complain in the present case. The main difference, however, between the present case and Hansen v. Independent School Dist. No. 1, supra, is that in the latter case the objectionable activity continued until as late as 1:00 a.m., whereas in the present case it is undisputed that since 1963 the games have ceased by 10:00 p.m. on every occasion. On rehearing in Hansen v. Independent School Dist. No. 1, supra, this court held that if the games were over by 10:45 p.m., as required by the district court order, that the activity would not constitute a nuisance. Similarly it is our opinion here that games conducted in compliance with the district court's order do not constitute a nuisance. To the same effect are Kasala v. Kalispell Pee Wee Baseball League, 439 P.2d 65 (Mont. 1968); Casteel v. Town of Afton, 227 Iowa 61, 287 N.W. 245 (1939); and Neiman v. Common School Dist. No. 95, 171 Kan. 237, 232 P.2d 422 (1951).
Several cases dealing with whether the casting of light upon the land of another, by itself or in connection with other objectionable activity, constitutes a nuisance are collected in Annot. 5 A.L.R.2d 705. In dealing specifically with sporting events and games, the annotation states that:
"The subject matter of an important group of cases deals with lighting attendant upon the playing of games or sports at night. In this section we frequently find the courts speaking in terms of the balancing of interests between those who, in our modern civilization, must take their recreation at night, and the neighboring property owners." (at 707)
In the present case the record reflects that the use of this lighted recreation field is necessary at the allowed time because most of the participants in the Church's recreation program are employed at the National Reactor Testing Station near Arco, Idaho, and do not get home from work until 6:00 or 6:30 p.m. Under such circumstances the Church finds it impossible to conduct its softball program without the aid of lights.
The law is well settled that where baseball constitues a nuisance because of particular objectionable features associated with it, a court should not enjoin the entire activity, but rather should only attempt to eliminate the objectionable features. The prevailing view is well stated in Kasala v. Kalispell Pee Wee Baseball League, 439 P.2d 65 (Mont. 1968):
"It should be noted in considering the court's actions in this case that if a nuisance is private and arises out of the particular manner of the operation of a legitimate enterprise the court should have done no more than to point to the nuisance and decree methods of adoption calculated to eliminate the injurious *192 features. Here it was possible to have eliminated the objectionable features which were alleged to have infringed upon the ordinary rights of the respondents, for equity may so decree, instead of compelling, as the trial court did here, the abatement of the use of the baseball field." (at 69)
See also Casteel v. Town of Afton, 287 N.W. 245, 227 Iowa 61 (1939); Neiman v. Common School Dist. No. 95, 171 Kan. 237, 232 P.2d 422 (1951); Downey v. Jackson, 259 Ala. 189, 65 So.2d 825 (1953); McArtor v. Graylyn Crest III Swim Club, Inc., 41 Del. Ch. 26, 187 A.2d 417 (1963); Mahlstadt v. City of Indianola, 251 Iowa 222, 100 N.W.2d 189 (1959); Hooks v. International Speedways, Inc., 263 N.C. 686, 140 S.E.2d 387 (1965); Herring v. H.W. Walker Co., 409 Pa. 126, 185 A.2d 565 (1962); Webb v. Town of Rye, 108 N.H. 147, 230 A.2d 223 (1967); Five Oaks Corp. v. Gathmann, 190 Md. 348, 58 A.2d 656 (1948). The common result in these cases is not to enjoin the activity, but to issue a decree enjoining the operation of lights or activity after a certain hour or imposing certain other reasonable restrictions on the activity. Seldom is the activity completely abated when the problem can be solved by eliminating the objectionable features of the activity.
In the case at bar there was a great deal of conflicting testimony concerning the effect of the noise and lights from these softball games on adjoining property owners. Several landowners testified that the activity on the Church's land forced them to take refuge in their houses and abandon the enjoyment of their yards during the summer months. There was also testimony to the effect that it is difficult or impossible to sleep before the games are over and that games often begin as early as 6:00 a.m. No one, however, testified that he had suffered any physical or emotional consequences from the activity, and nearly everyone conceded that most of the objectionable features, such as trespassing, dust, and late hours have been eliminated. Only the noise and lights remain as any kind of a problem. On the other hand, several witnesses testified for respondent Church that although they can hear the noise and do receive some illumination from the lights they are not disturbed and are not forced to retreat from the normal use of their property. In addition, evidence was received regarding light meter readings at several residences in appellants' area. These readings indicate that in general the respondent Church's lights cast no greater illumination on appellants' land than is cast by ordinary street lights on the land of their neighbors.
In the face of the conflicting testimony in the present case regarding the effect of this recreational complex on the surrounding neighborhood, the trial court found against the appellants contention that it constituted a nuisance. There is substantial competent evidence in the record to sustain such a finding and it is well settled that in such cases this court will not disturb the finding of the lower court. I.C. § 13-219; Dick v. Reese, 90 Idaho 447, 412 P.2d 815 (1966); Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11 (1966); Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Fairchild v. Mathews, 91 Idaho 1, 415 P.2d 43 (1966).
Since the district court ordered the City to issue a certificate of occupancy and any necessary building permits to the Church for the recreational area and the City has agreed to issue the certificate if a court should find that the recreational complex is a permissible use in an R-1 zone, it is unnecessary to determine whether the City, having induced the Church to construct this field in reliance on the City's promise to issue a permit for the whole project when the plans for the main building were submitted, is estopped from refusing to issue the permit. Since the district court found that the recreation field is a permissible use in an R-1 zone, and that it does not constitute a nuisance when used only between the hours of 7:00 a.m. and 10:00 p.m., it is the City's duty to issue the necessary certificate of occupancy and *193 building permit for this facility in accordance with the district court's judgment.
The judgment is modified by striking therefrom all reference to "Rocky Mountain Standard Time," and substituting therefor "prevailing Mountain Time." As so modified the judgment is affirmed.
Costs to Respondent.
SMITH, C.J., TAYLOR and SPEAR, JJ., and BEEBE, D.J., concur.