17 N.J. Super. 246 (1951)
85 A.2d 833
ISAAC JOSEPH SEXTON, PHILIP BLUEM, ISIDORE MILLER, JOSEPH MILLER, LOUIS HEYMAN, DEBORAH RUBIN, VICTOR R. LEVEY AND MARY B. LEVEY, HIS WIFE, FRED N. NICOLACOPULOS AND ANNA GRANT, PLAINTIFFS,
v.
C. ALFRED BATES, ZONING OFFICER OF THE CITY OF NEWARK, FREDERICK BIGELOW, BUILDING INSPECTOR OF THE CITY OF NEWARK, BOARD OF ADJUSTMENT OF THE CITY OF NEWARK, ESSEX COUNTY RITUALARIUM SYNAGOGUE, AN UNINCORPORATED ASSOCIATION, AND ESSEX COUNTY RITUALARIUM SYNAGOGUE, A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 31, 1951.
*247 Messrs. Koehler, Augenblick & Freedman (Mr. Bernard Freedman appearing), attorneys for plaintiffs.
Mr. Charles Handler, attorney for municipal defendants.
Messrs. Hodes & Hodes (Mr. Samuel I. Kessler of counsel), attorneys for defendants Essex County Ritualarium Synagogue, *248 an unincorporated association, and Essex County Ritualarium Synagogue, a body corporate.
EWART, J.S.C.
This suit, in lieu of the old writ of certiorari, seeks to review the legality of the action of C. Alfred Bates, Zoning Officer of the City of Newark, in having approved, and the action of Frederick Bigelow, Building Inspector of the City of Newark, in having issued on July 2, 1951, a permit to the defendant Essex County Ritualarium Synagogue, an unincorporated association, authorizing alterations in the one-family dwelling house erected at 130 Renner Avenue in the City of Newark by constructing therein ritual pools or a mikvah to be used for ritualistic bathing and to be built below the first floor level of the building, and for use of the said building as a place for ritualistic bathing, mostly by Hebrew females. The suit also challenges the action of the Board of Adjustment of the City of Newark, to which an appeal had been taken, in deciding the matter adversely to the appellants therein, plaintiffs in the present suit, and in having upheld the action of the building inspector in issuing the permit in question.
The premises in question are located in the first residence district of the City of Newark, as described in the zoning ordinance, section 3 of which ordinance regulates construction and use of buildings in that district as follows:

"Section 3: USE REGULATIONS CONTROLLING FIRST RESIDENCE DISTRICTS
In a First Residence District no building or premises shall be used, and no building shall be erected, in whole or in part for any industrial, manufacturing or commercial purpose, or for any other than the following specified purposes:
(a) Single family detached residence buildings not less than two and one-half (2 1/2) stories in height.
(b) The office of a physician, surgeon or dentist when situated in the same building used by such physician, surgeon or dentist as his private residence.
(c) Churches.
(d) Schools, libraries or public museums.
*249 (e) Accessory uses customarily incident to the above uses, the term accessory use, however, not including a business or any building or use, not located on same lot with the building to which it is accessory. A private garage, as herein defined, shall be permitted as an accessory use."
Plaintiffs contend that the issuance of the permit in question constitutes a clear violation of the provisions of section 3 of said ordinance, but defendants contend that the permit was properly issued because the mikvah or ritualarium is a church where religious rites are practiced and prayers are said and that sub-paragraph c of section 3 of the ordinance authorizes the construction of churches in the first residence district.
Plaintiffs, property owners in the first residence district, filed on August 2, 1951, an appeal from the determination of the zoning officer and building inspector to the board of adjustment, pursuant to the provisions of the statute, R.S. 40:55-42. Hearings on the appeal were had before the board of adjustment on October 4 and October 18, 1951, and on November 1, 1951, the board of adjustment rendered a decision sustaining the issuance of the building permit and dismissing the appeal, the decision having taken the form of a motion duly adopted and which reads as follows:
"that the Board of Adjustment sustain the action of the superintendent of buildings in issuing a permit for the alteration of the dwelling at 130 Renner Avenue to incorporate therein facilities for ritualarium purposes, which are part of the Jewish religion and, therefore, within the permitted uses in a first residence district, and that the appeal thereon be dismissed."
Plaintiffs make the point that by the terms of the statute, R.S. 40:55-45, more than 90 days having expired between the date of the filing of the appeal on August 2 and the rendition of the board's decision on November 1, 1951, the board had no power to render a decision, but that, nevertheless, the failure of the board to render a decision within the required statutory period shall be deemed to be a decision adverse to the appellants (plaintiffs in the present suit), as *250 though the said board had rendered a decision to that effect. In either case, the net result is a decision by the board of adjustment adverse to the contention of the appellants there, plaintiffs here.
On November 2, 1951, plaintiffs filed a verified complaint in which they seek to have the court reverse and set aside the action of the city authorities in granting the permit in question; restrain defendants from proceeding, pendente lite, under the apparent authority of said permit, with the alteration of the said building at 130 Renner Avenue, Newark, N.J.; permanently restraining the ritualarium from converting the dwelling house at 130 Renner Avenue into a mikvah by the construction of ritualistic pools; and to restrain the city authorities from hereafter issuing any permits for the construction of ritualistic pools or mikvahs in the said premises at 130 Renner Avenue. Upon the filing of the verified complaint, the court allowed an order to show cause on November 2, 1951, returnable November 9, 1951, with temporary restraint, in order to preserve the status quo. The temporary restraint has been continued from time to time pending final determination of this cause.
Affidavits in support of their respective positions have been submitted by plaintiffs and by the ritualariums and a certified transcript of the evidence taken before the board of adjustment on the appeal has been filed with the court; and at a hearing on the matter on November 26, 1951, counsel for the respective parties stipulated that the matter was submitted for final determination by the court on the pleadings, the affidavits on file and a certified record of the proceedings before the Board of Adjustment of the City of Newark, subject, however, to reservation by plaintiffs' attorney stating his objections to consideration by the court of statements contained in the record of the hearings before the board of adjustment that do not constitute legal evidence. The record of the proceedings before the city authorities is not complete in that there has not been filed with the court the application for the building permit, nor the permit as *251 issued and concerning which the present litigation is pending. However, the contents of the application and of the permit sufficiently appear from the testimony given before the board of adjustment, and in the affidavits filed, to enable the court to pass upon the matter.
Upon the pleadings, the affidavits on file, the record on the appeal before the board of adjustment, and the foregoing stipulation by counsel, both parties move for summary judgment.
The whole controversy can be reduced to the single question of whether or not a ritualarium or a mikvah is a church within the meaning of section 3 (c) of the Zoning Ordinance of the City of Newark. In the hearing on appeal before the board of adjustment, both the plaintiffs and the defendant ritualariums cited as authority a booklet on Jewish family life, mentioned below, and again in the affidavits filed with the court by the respective parties, plaintiff quotes from said booklet and the defendant ritualarium annexes to its affidavits a copy of the booklet entitled Jewish Family Life, which booklet defines the terms "mikvah" and "ritualarium" and explains its purpose and function in Jewish family life and its religious significance. Rabbi Sidney B. Hoenig, Ph. D., is the author of the booklet in question which is published by Spero Foundation and distributed by Union of Orthodox Jewish Congregations of America. Inasmuch as the booklet in question is relied on by both parties as an authoritative exposition of what constitutes a ritualarium or mikvah, its purpose and function, I will accept the statements in said booklet as containing a correct definition and description of the Jewish ritualarium or mikvah and of its purposes and function in Jewish family life. I quote from said booklet as follows:

"THE SYMBOL OF FAMILY PURITY

THE MIKVAH

Chapter III.

WHAT IS A MIKVAH?
Literally, the word means `gathering'; specifically, the `gathering of waters,' as in the account of the Creation in Genesis I:10 and *252 in Lev. XI:36 . Traditionally it refers to a ritual bath, built according to Rabbinic specifications. The initial source of the water must be natural and not drawn by vessel. Its source must be either a natural spring, rain, or water obtained from natural ice. Other water may be added, once the minimum Mikvah requirements have been met. The Mikvah must at all times contain a minimum of 40 seah of water. That is traditionally 24 cubic feet or approximately 180 gallons.
In modern times, in all buildings containing the ritual bath (Ritualarium), there is, in addition to the pools used for immersions a distinct and original Mikvah built according to rabbinic rules. A conduit leads to these pools so that the water therein is always connected with the water in the original Mikvah. (Page 31.)

THE RELATIVE IMPORTANCE OF THESE LAWS
According to Jewish law, when a community has insufficient means with which to provide a Synagogue, a `Sefer Torah,' and a Mikvah, the latter takes precedence over the other two. A Synagogue or Sefer Torah may even be sold to provide funds for the Mikvah. (See `Meshiv Davar' 1, 45 by Rabbi Naftali Zevi Berlin.)

THE REAL PURPOSE OF MIKVAH
Sanitation, cleanliness or health are only the by-products of obedience to this law. A woman must be physically clean before she enters the Mikvah. The main purpose is sanctification and purification. TEVILAH IS A RELIGIOUS EXPERIENCE, GIVING THE WOMAN THE SEAL OF SACREDNESS AND RESPECT. (Pages 32 and 33.)

WHY A MIKVAH AND NOT A BATHTUB?
The ordinary bathtub is not so constructed as to contain water originating from a natural spring. It cannot therefore serve the purpose of Mikvah. MERE CLEANSING FOR HYGIENIC PURPOSES IS NOT SUFFICIENT from the Jewish point of view, although a bath or shower is required before immersion in a Mikvah. Tevilah is really cleansing plus SANCTIFICATION and IMMERSION. Psychologically, the requirement of Tevilah serves as a deterrent to premature intercourse, whereas a bath, which is usually taken any time, could not have that restraining influence.
There is as much difference between bathtub and Mikvah as there is between `trefah' meat cleansed, and Kosher meat prepared according to Jewish law.
A Jewess who does not perform Tevilah in a proper Mikvah cannot be called a true Jewish wife. Only the Tevilah manifests her loyalty to the Jewish Law. (Pages 33 and 34.)

THE MODERN RITUALARIUM
How Has the Problem Of Mikvah Been Solved? 
In many American cities the observance of the Mikvah ritual has been strengthened by the building of Model Mikvahs. These are *253 known as Ritualariums. The outstanding features of these Model Mikvahs are:
1. Individual Mikvahs  insuring privacy and accommodating only one person at a time.
2. Ever-changing water  a fresh supply for each visitor.
3. Bathrooms with colored tubs, tiled floors, and walls lined with bevelled mirrors.
4. Ultra-violet Ray Lamps  beneficial to health, and used for sterilizing freshly laundered linen.
5. Modern beauty parlors  with hair driers and other feminine needs.
6. Nominal fees  since it is a community undertaking and not a private enterprise. There is no fee for those who cannot afford it." (Pages 34 and 35.)
In the light of the foregoing explanation of what constitutes a ritualarium or mikvah, and of its purposes and functions, can it be said to constitute a church within the meaning of section 3 (c) of the Zoning Ordinance of the City of Newark?
Webster's International Dictionary (2d ed.), defines the word "church" as follows:
"1. A building set apart for public worship, especially Christian worship; * * *. A house of worship for a parish as distinguished from one for a small group as a college or those living in a remote part of the parish; contrasted with chapel * * *.
2. A place of worship for any religion, as, formerly a Jewish or Pagan temple or a mosque."
It is a statutory rule that in the construction of laws and statutes of this State, words and phrases shall be read and construed with their context and shall be given their generally accepted meaning, according to the approved usage of the language. R.S. 1:1-1. The same rule would apply to the construction of the meaning of the words used in a city ordinance.
In George v. Board of Excise of Elizabeth, 73 N.J.L. 366 (Sup. Ct. 1906), affirmed 74 N.J.L. 816 (E. & A. 1907), the board of excise had granted a liquor license for certain premises which, the prosecutors contended, were located within 200 feet of a church, contrary to the provisions of *254 the statute to be found in L. 1905, p. 42. It appeared that on the outside of the building, which prosecutors contended constituted a church, was a sign bearing the legend "Mount Zion Mission"; that in the first floor of the building there was conducted a sewing class for children and religious services on certain evenings and on a Thursday afternoon but not on a Sunday; that the upstairs portion of the building was occupied as a dwelling and that in the downstairs rear there was a portion of the building used for storage purposes, and that one of the rooms in the front of the building on the first floor was equipped with chairs and that some religious services were conducted there. It further appeared that the so-called mission had no board of trustees, was not organized as a church, and that the people who attended the services were known as "faith curists." The court held that the building in question was not a church within the meaning of the statute, even though some religious services were conducted therein.
Newark Athletic Club v. Board of Adjustment of the City of Newark, 7 N.J. Misc. 55 (Sup. Ct. 1928), dealt with section 6 (a) of the zoning ordinance of the city which prohibited the issuance of a building permit for the erection, etc., of a public or commercial garage in any district where any part of the lot upon which the same was to be erected was situate within 200 feet of a church, public school and certain other public buildings. In that case it appeared that the board of adjustment of the city overruled the building inspector and issued a permit for a commercial garage on a lot less than 200 feet distant from the Trinity Parish House which was alleged to be a church and a school within the meaning of the ordinance. It appeared in that case that the Sunday school of the Trinity Parish was conducted in the parish house; that prayers were read, hymns sung, and a reading of the scripture and Bible instruction were carried on in the parish house twice on each Sunday excepting July and August; that choir practice was carried on in the parish house almost nightly; that church committee meetings and *255 church social functions were held regularly in the parish house; and that meetings of the young people of the church and of the women's auxiliary were also held in the parish house. And it also appeared that Trinity Church was located in Military Park, at Broad and Rector Streets in the City of Newark, about a block and a half away from the parish house in question. The court cites various definitions of the word "church," including the one defining a church edifice as "a building in which people assemble for the worship of God and for the administration of such offices and services as pertain to that worship," and concluded from the proofs that Trinity Parish House did not fall within the legally accepted definition of a church as referred to by section 6 (a) of the zoning ordinance in question.
Ritter v. Jersey City District Missionary Society, etc., 105 N.J. Eq. 122 (Ch. 1929), involved the construction of restrictive covenants relating to the use of lands and whether or not the erection of a church upon the lands would constitute a violation of such covenants. In passing on the question Vice Chancellor Fallon said: "A church is a place where persons regularly assemble for worship," citing 11 C.J. 763.
Counsel for the defendant ritualariums argue that a church is a place where persons regularly assemble for worship, citing Ritter v. Jersey City District Missionary Society, supra; that the word "worship" means the paying of divine honors to a deity, the act of performing homage and reverence; that the paying of homage varies greatly in different religious orders and sects, and that where an edifice is devoted wholly to the observance of a religious rite worship of the deity is being performed and that therefore a church exists. In opposition, counsel for plaintiffs say that the admitted fact that a mikvah or ritualarium is a place where certain religious rites are performed does not make the place or edifice a church, and that one could as well argue that an abattoir wherein animals and poultry are slaughtered in accordance with certain rites of the Jewish religion is a church because of the fact that certain religious rites are observed and performed *256 in the slaughtering of animals and poultry designed for consumption by orthodox Jews.
Both logic and authority lead me to adopt the view of the plaintiffs on this point. The fact that a mikvah is devoted to the performance of certain religious rites by females does not constitute it a building set apart for public worship, as a church, in the common understanding of the meaning of that word. In George v. Board of Excise of Elizabeth, supra, the court did not regard a mission in which some religious services were conducted as a church under the statute prohibiting the granting of a liquor license within a specified distance of a church, and, in Newark Athletic Club v. Board of Adjustment of the City of Newark, supra, the court refused to regard a parish house in which some religious services were admittedly conducted as a church within the meaning of that word as used in the Zoning Ordinance of the City of Newark.
Counsel for the defendant ritualariums further argue that under paragraph 3 of article I of the New Jersey Constitution of 1947 every person is given the privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience and that a denial by the city authorities of the right to construct and operate a ritualarium or mikvah in the property at 130 Renner Avenue in Newark would violate the section of our Constitution above cited. And counsel for defendants further cite the First and Fourteenth Amendments to the United States Constitution as a guarantee of their right to religious freedom in the respect mentioned. To adopt that view would in substance deny to a city the right to restrict or regulate by zoning ordinance the construction and operation of an edifice where any religious rites are performed in a church or elsewhere. It is not believed that the constitutional provision respecting freedom of worship and freedom of religion is at all involved in this case. It is not necessary to freedom of worship or freedom of religion that a mikvah or a religious mission or a parish house or a kosher abattoir be permitted to exist and operate in a first *257 class residential neighborhood. There are numerous other neighborhoods in which such institutions may legally operate without violation of the zoning ordinance and without interference with the constitutional privileges of religious freedom and the privilege of worshipping in a manner agreeable to the dictates of the worshipper's own conscience.
Defendants cite, inter alia, a recent decision of the Common Pleas Court of Allegheny County, Pa., In re Appeal of Stark, reported in 98 Pittsburgh Legal Journal, at page 361. That case involved an application for a permit by a Catholic order to use the rear building on a piece of church property as a dormitory for retreatants during closed, spiritual retreats, lasting longer than a day. The property was located in a first class residential zone which limited the erection and use of buildings to one-family dwellings, church, a library, greenhouses as accessories to a dwelling, and certain other accessory uses. The court held (page 376) that the board of adjustment of the city, in holding that it would grant a variance, made a reasonable decision in harmony with the general purposes and intent of the ordinance and the public interest, and that any other action by the board would result in unnecessary hardship and would do substantial injustice to the religious order. That case has no application to the case at bar for the reason that the permit in the instant case was not granted as a result of an appeal to the board of adjustment to grant a variance authorized by R.S. 40:55-39 (d), but rather was granted by the Zoning Officer and Building Inspector of the City of Newark, apparently upon the advices of the Law Department of the city. The only time this case has been before the board of adjustment was on the appeal of plaintiffs, under sub-division (a) of the statute last cited. There was not involved in the appeal the granting of any variance.
Defendants' counsel also cites decision of the Appellate Court of Indiana in Board of Zoning (Indianapolis) v. Wheaton, 76 N.E.2d 597 (1948). In that case, it was held that a combination unit consisting of a church, priest's *258 mansion, convent and off-parking lot might properly be erected in a first class residential zone restricted to one-family dwellings, churches, public schools, etc. The question before the court was whether the convent or sisters' home came within the meaning of the word "church," and the court held that the erection and use of a convent might fairly be termed a "church purpose" and that any building intended to be used primarily for purposes connected with the faith of such religious order may be said to be used for church purposes. That case has no application to the case at bar because the Zoning Ordinance of the City of Newark does not permit the erection in a first residence district of buildings to be used for church purposes, but rather limits the same to the erection of a church; nor can it be said that the mikvah or ritualarium in question is an accessory to a church permitted by sub-division (e) of section 3 of the Zoning Ordinance of the City of Newark, above quoted, for the reason that under the ordinance the accessory use must be located on the same lot with the building to which it is accessory, and the proofs in the instant case show that the proposed mikvah or ritualarium is not located on the same lot as any synagogue or other church building.
Scott v. Roman Catholic Archbishops of Oregon, 83 Ore. 97; 163 Pac. 88 (Sup. Ct. 1917) is cited by defendants for the proposition that a convent may be deemed a "church purpose" within the provision of a restrictive covenant reserving the right to consent to erection of buildings for school and church purposes. That decision is not authority in the case at bar because under the Zoning Ordinance of the City of Newark we are not concerned with "church purposes" but rather with the erection and operation of churches.
At the hearing of the appeal before the Board of Adjustment of the City of Newark it was made to appear by the testimony of C. Alfred Bates, zoning officer of the city, that the application for the permit for the construction of the mikvah or ritualarium in question contained the following language describing the proposed operation and construction: *259 "proposed alteration for ritual pool known as ritualarium or mikvah. Use is regarded as establishment of a religious function  synagogue"
and that he at first denied the application for a permit because he did not consider it to be a church (page 20), but that subsequently he changed his decision and granted the permit, although he still believes it is not a church, because the Law Department of the city interpreted the proposed ritualarium pool to be a church (pages 20-21).
While the booklet entitled Jewish Family Life, above cited, and distributed by the Union of Orthodox Jewish Congregations of America, and upon the authority of which both the plaintiffs and defendants rely, clearly indicates that there is a deeply religious significance attached to the operation of a ritualarium or mikvah, it also states that included in the outstanding features of a mikvah are bathrooms with colored tubs, tile floors, and walls lined with bevelled mirrors; ultra-violet ray lamps; and modern beauty parlors. These features of a mikvah lend added weight to the conclusion that a mikvah is not a church as described in paragraph (c) of section 3 of the Zoning Ordinance of the City of Newark. Nor in my view is there any denial or restriction of freedom of religion or freedom of worship guaranteed by both the Federal and State Constitutions involved in this case. There are many sections and districts in the City of Newark where a mikvah or ritualarium may be constructed and operated other than in the first residential district.
Holding the views expressed above, it follows that the motion for summary judgment in favor of plaintiffs is granted and the motion for summary judgment in favor of defendants is denied.