189 N.J. Super. 404 (1983)
460 A.2d 191
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT J. CAMERON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 29, 1983.
Decided April 21, 1983.
*405 Before Judges MATTHEWS, ANTELL and FRANCIS.
Frank J. Morelli, attorney for appellant (Dwayne C. Vaughn on the brief).
Stanley Cutler, attorney for respondent Township of Franklin.
The opinion of the majority was delivered by MATTHEWS, P.J.A.D.
The judgment of the Law Division is affirmed substantially for the reasons expressed by Judge Meredith in his thoughtful opinion, 184 N.J. Super. 66 (Law Div. 1982).
With respect to defendant's argument that a residence does not become a "church or similar place of worship" simply because a congregation holds its regular Sunday services there, we observe, that according to Webster[1], a "church is a building set apart for public esp. Christian worship: as a; the principal house of a parish." The undisputed facts establish that defendant's worship services were moved from a public building to his home for financial reasons. It cannot be seriously disputed that each of the locations constituted the church for the congregation. The issue here is not one of semantics, however, it involves the reasonableness of police power regulation of defendant's asserted First Amendment rights. We are satisfied that Judge Meredith has correctly resolved the issue.
*406 ANTELL, J.A.D. (dissenting).
Defendant was served with a summons charging him with using his property for "other than permitted use" under § 504.1 of the zoning ordinance. The trial in the municipal court proceeded over defendant's repeated declaration that he did not understand the nature of the charge against which he was called upon to defend himself. The property is located in an R-15 zone which the cited section of the ordinance permits to be used for single-family dwellings on lot sizes no less than 15,000 square feet. Defendant's premises meet the standard of permissibility set forth in the ordinance and the question presented is what activities he may carry on in his own home without rendering himself liable under § 1700.2 of the ordinance for monetary penalties and imprisonment for up to 90 days.
In my view, the activities upon which the conviction rests, consisting of "prayers, singing and preaching" between 11 a.m. and noon on Sundays, are permissible. Disruptive conduct arising therefrom may be dealt with only under the general police powers, not as zoning violations. The Law Division and the majority of this court, however, conclude that these transform defendant's home into a "church or similar place of worship." Drawing upon sections of the ordinance which permit churches in other residential zones on lots of not less than two acres, they further conclude that by implication churches are not permitted in the R-15 zone and that defendant is therefore liable to punishment. My disagreement is addressed to the conclusion that defendant's home is being used as a church.
The facts are clear. The property is owned by defendant  not by a church  and occupied by him as his residence. Sunday services are attended only by those who are invited by defendant and not in response to an open, public invitation.
The ordinance's section on definitions does not define a "church." Relying on Ritter v. Jersey City Dist. Missionary Society, 105 N.J. Eq. 122, 123 (Ch.Div. 1929), the Law Division utilized as its definition "a place where persons regularly assemble *407 for worship." While this definition may have been workable for the purposes of Ritter, it is obviously not serviceable within the present context. Although churches may be places where people regularly assemble for worship, it does not follow that any place where persons regularly assemble for worship is therefore a church. Portage Tp. v. Full Salvation Union, 318 Mich. 693, 29 N.W.2d 297, 300 (Sup.Ct. 1947), app. dism. 333 U.S. 851, 68 S.Ct. 735, 92 L.Ed. 1133, petition for reh. den., 334 U.S. 830, 68 S.Ct. 1336, 92 L.Ed. 1757 (1948). If applied literally, the definition would effectively proscribe even the convocation of immediate family or friends for evening or weekly prayers and saying grace at the dinner table.
The majority uses a somewhat different definition. Resorting to Webster, it defines a church as "a building set apart for public esp. Christian worship: as a; the principal house of a parish." If major emphasis is placed upon the requirement that a church be a building "set apart for public ... Christian worship" defendant's home surely would not be a church since it has not been "set apart" and the services are not public. Although it may be utilized for approximately one hour a week for church purposes, in every substantial sense of the word it remains chiefly a residence. While the element of being "set apart" is not altogether free of ambiguity, at the very least it requires that the building be primarily devoted to church purposes.
The majority appears to assume that because defendant is its spiritual leader the church is localized in his home. From this the majority concludes that the house is covered by so much of the Webster definition which characterizes a church as "the principal house of a parish." But this is an intolerable standard by which to gauge the permissibility under a land use regulation of conduct within a private home. Logically, it would preclude the formation of new churches or the reformation of orthodox forms of worship. Such undertakings are commonly initiated by small groups of people who may be completely without financial resources. To declare impermissible the conduct of inoffensive *408 ceremonial and organizational activities within the private home of one of the church members surely lies beyond the zoning powers of a municipality.
A church building is merely a physical structure. In its wider sense, a church is an organization of people built around a set of beliefs and ceremonies which focus on religious worship. I see no reason why a municipality may not place restrictions upon the operation of a church building within a residential zone. This much Franklin Township has done. However, it has not spoken against the practice of religion in one's home nor suggested that such activities transform the use from a home to a church in violation of the ordinance.
It is settled that "`... no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" State v. Lashinsky, 81 N.J. 1, 17 (1979). Hence, a statute is unconstitutional if it is couched in terms "`so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" Ibid. Also, State v. Lair, 62 N.J. 388, 393 (1973).
The utter vagueness of the charge for which defendant was convicted is nowhere better demonstrated than by the colloquy in the municipal court after the entry of judgment. Beyond saying that defendant was "enjoined" not "to operate a church on those premises" the judge was unable to say what it was that defendant was prohibited from doing, that is, what it was that transformed his home into a church. When asked whether defendant was barred from conducting worship services or Bible study classes or vestry committee meetings the judge could only answer "he knows what he's been doing and he knows what the basis of the complaint is and he's been ordered to cease and desist from that type of conduct...." The questions raised are fairly put. Certainly he may have cocktail parties in his home, he may host card parties, he may show worldly movies, have business associates over for dinner and have quartet rehearsals. But whether, without risk of prosecution and possible incarceration, *409 he can hold Bible study meetings, counsel members of his congregation, have church social teas or dinners, have a small committee meeting, hold a hymn sing, or conduct Sunday school classes for children which would include prayers, hymn singing and Bible instruction, is clouded in doubt. No one can say whether all or any of these constitute the operation of a church. Since the municipality has furnished no definitional guidance defendant should not have to choose among these innocuous alternatives at peril of prosecution.
Pertinent legal precedents in New Jersey lend no support to the view that defendant's home is being operated as a church. In George v. Bd. of Excise, 73 N.J.L. 366 (Sup.Ct. 1906), aff'd o.b. 74 N.J.L. 816 (E. & A. 1907), the question considered was whether a "Gospel Mission" was a church within the context of a statute which declared that a liquor license could not be granted to an establishment located within 200 feet of a church. The Mission held Sunday school classes and sewing school for children and religious services on Tuesday afternoons and certain evenings, but not on Sunday mornings. The members of the congregation were called "Faith Curists" but the church was not formally organized under the laws of the state. Reasoning that the "legislature clearly did not intend that wherever religiously inclined persons meet together for Bible study and the like a church existed within the meaning of this excise regulation...," the court concluded that the Mission was not a church. Id. at 368.
In Newark Athletic Club v. Newark Bd. of Adj., 7 N.J. Misc. 55 (Sup.Ct. 1928), the question of defining a church arose within a similar context as that in George v. Bd. of Excise, supra. There, it was found that the purposes and uses to which the alleged church building was put was
... to conduct the Sunday school of Trinity Parish, at which there are prayers read, hymns sung, the reading of scripture and bible instruction, twice each Sunday except during July and August. There is choir practice every night in the week except Friday. There are church committee meetings and church social functions held there and services for deaf mutes held once a month except during Lent. In this building are also held meetings of the young people of the *410 church, the women's auxiliary and boy scouts. Meetings of the vestry are also probably held in this building. [Id. at 58]
On these facts the court concluded "that from nothing in the proofs before us does the Trinity Parish House come within the legally accepted definition of a church as referred to by Section 6a of the amendment to the zoning ordinance." Id. at 59-60.
Finally, in Sexton v. Bates, 17 N.J. Super. 246 (Law Div. 1951), aff'd o.b. 21 N.J. Super. 329 (App.Div. 1952), citing the cases mentioned above, the court concluded that a "Mikvah," a building "devoted to the performance of certain religious rites by females does not constitute it a building set apart for public worship, as a church, in the common understanding of the meaning of that word." Id. at 256, 85 A.2d 833. Also see Annotation, "What Constitutes `Church,' `Religious Use,' or the Like within Zoning Ordinance," 62 A.L.R.3d 197 (1975).
While I share the understandable concern of my colleagues for preserving the tranquillity of this residential neighborhood, this cannot be accomplished in the manner in which it was done. We are dealing with a constitutionally protected liberty which may be regulated where a substantial government interest requires only by a "narrowly drawn" zoning ordinance in a "manner which least impacts upon the right of individuals to order their lives as they see fit." Schad v. Mount Ephraim, 452 U.S. 61, 69, 101 S.Ct. 2176, 2183, 68 L.Ed.2d 671 (1981); State v. Baker, 81 N.J. 99, 114 n. 10 (1979). "[T]he zoning power is not infinite and unchallengeable; it `must be exercised within constitutional limits.'" Schad v. Mount Ephraim, supra, 452 U.S. at 68, 101 S.Ct. at 2182, quoting Moore v. East Cleveland, 431 U.S. 494, 514, 97 S.Ct. 1932, 1943, 52 L.Ed.2d 531 (1977).
If defendant's activities are being carried on so as to disturb the peace of the neighborhood or so as to constitute a nuisance or produce vehicular traffic congestion, these consequences may be dealt with by the exercise of police powers more nearly appropriate to the particular problems which may arise. State v. Baker, supra 81 N.J. at 111; Kirsch Holding Co. v. Manasquan, 59 N.J. 241, 253 (1971). "Zoning ordinances are not *411 intended and cannot be expected to cure or prevent most anti-social contact in dwelling situations." Id. at 253-254. But so long as defendant's activities are carried on without disrupting the public order they may not be otherwise curtailed.
I would reverse.
NOTES
[1] Webster's Third New International Dictionary unabr., 1971, at 404.