204 N.J. Super. 575 (1985)
499 A.2d 559
ISAAC FARHI, PLAINTIFF,
v.
THE COMMISSIONERS OF THE BOROUGH OF DEAL; THE DEAL TOWN CLERK; THE BOROUGH OF DEAL; A MUNICIPAL CORPORATION, AND THE BOARD OF ADJUSTMENT OF THE BOROUGH OF DEAL, DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided July 19, 1985.
*577 Richard B. Ansell for plaintiff (Anschelewitz, Barr & Ansell, attorneys).
Richard H. Mills for defendants (Lautman, Henderson & Mills, attorneys).
SELIKOFF, J.S.C.
This Court must resolve whether our State Constitution is violated when a municipal zoning ordinance, which excludes houses of worship, is enforced to prevent the gathering of religious worshipers in a private residence. The matter arises by verified complaint in lieu of prerogative writs with an order to show cause seeking temporary restraints. R. 4:69-1 et seq. Defendant municipal bodies were enjoined from issuing any summons or from otherwise prosecuting plaintiff or his invitees for assembling or praying at plaintiff's home pending final disposition of this matter. R. 4:69-3.
At a plenary hearing two witnesses, plaintiff and a municipal planning expert, testified on behalf of plaintiff. Another planning expert testified on behalf of defendants. The court also sat in appellate review of the record below which had been developed before both defendant municipal bodies. R. 4:69-1 et seq.
The material facts are not in dispute. Plaintiff Isaac Farhi is the record owner of a single-family dwelling at 258 Norwood Avenue, in the Borough of Deal, New Jersey. The home is a multi-level structure situated upon approximately one-quarter of an acre. Plaintiff's home contains a large living room, dining room, foyer, den and kitchen on the first floor and several bedrooms upstairs. A detached garage with a finished lot is also on the property. Plaintiff resides in his home with his wife and four children.
Plaintiff is a self-described educator employed at a local religious school and is a rabbi of the Sephardic Jewish faith. He asserts that functioning as a rabbi is secondary to that of *578 his primary calling, a teacher. The religious principles of his faith require that its male adherents assemble for a brief daily prayer session as well as for regular Sabbath and Holy Day services. A quorum of ten participants is required to conduct these daily religious services. A synagogue is available for use by members of the sect, but is located approximately one mile to the north of Rabbi Farhi's home. This is quite significant because on the Sabbath and Holy Days, the faithful are precluded from the operation of any mechanical device. Members of the sect are therefore prohibited from driving an automobile to transport themselves to Sabbath or Holy Day religious services. In addition, a significant number of elderly congregants reside within a one-mile radius of Rabbi Farhi's residence. Since the precepts of their faith as well as their own bodily limitations place restrictions on the distances these congregants may travel to attend religious services, Rabbi Farhi has permitted the use of his own home as a gathering place for the performance of such services since June 1983.
Rabbi Farhi did not apply to either defendant municipal body for a use variance before permitting religious services in his home. Only after a town official issued him a municipal summons was an application made to the Deal Board of Adjustment for a use variance. That variance application was denied by the board on March 1, 1984. The appeal by Rabbi Farhi to the board of commissioners was denied on July 24, 1984. N.J.S.A. 40:55D-17.
It is evident that Rabbi Farhi has converted a portion of the main floor of his home for a specific use during these religious services. A room has been outfitted with much of the accouterments of a synagogue including a tabernacle, a Torah, a podium and several chairs. The Farhi home has even been identified in certain religious publications and by members of the religious community as the "Synagogue of South Deal." On any given Sabbath or Holy Day, there are between 15 and 25 congregants in the Farhi home, all of whom must arrive on foot. The daily prayer gatherings are not as well attended, *579 with most congregants arriving on foot but several arriving by car. On two occasions there were large assemblages, but such experience has apparently not reoccurred.
Defendants contend that the use by Rabbi Farhi of his home in this manner is a violation of both the 1967 and 1984 zoning ordinance which restricts the use of the property to a residential use; that the board of adjustment correctly interpreted both zoning ordinances in requiring that plaintiff seek a use variance; that the board of adjustment's determination that plaintiff was not entitled to a use variance was neither arbitrary nor capricious; that the board of commissioners' affirmance of the denial by the board of adjustment of Rabbi Farhi's use variance application was also neither arbitrary nor capricious; that plaintiff failed to establish a valid nonconforming use, and that defendants' acts are not violative of plaintiff's right to freely exercise his religious beliefs as guaranteed by the State and Federal Constitutions.
Plaintiff contends that both the 1967 and 1984 zoning ordinances are unconstitutional because they violate his right to freely exercise his religious beliefs as guaranteed by the State and Federal Constitutions; that both ordinances represent an improper exercise of police power; that assuming a variance was necessary, it should have been granted because the use inherently serves the public welfare and any negative criteria are overcome, and that the actions of defendants in denying the application were arbitrary and capricious since plaintiff's worship activities are an explicit, valid use, as well as one permitted in a residential zone.
The municipal ordinance in effect at the time this action was commenced was adopted in 1967. Under that ordinance plaintiff's home was located in district six. That zone limited the principal use of plaintiff's property to a residence.
18-6.2 Districts 2 to 7 inclusive and 9 and 11 Use Regulations. Within districts numbers 2 to 7 inclusive and 9 and 11, no business or profession of any kind shall be conducted or carried on and no building on premises shall be used for other than one of the following purposes:

*580 a. A dwelling for one family or for one private, noncommercial housekeeping unit.
b. One greenhouse, not operated for profit and in which there is no display of products other than in growth, may be built or used on a plot as an accessory use to a one-family dwelling erected on the same plot. [Borough of Deal Ordinance § 18-6.2 (1967), emphasis supplied].
It is significant to note that the 1967 ordinance does not provide for the use of a church within any district of the Borough of Deal. The only way a church might exist in the borough is if it were constructed prior to December 28, 1922, the latest date from which a nonconforming use would be permitted. That ordinance stated:
18-4 Existing Nonconforming Buildings.
Except as hereinafter provided, no building or premises shall be used except in conformity with the provisions of this chapter which apply to the district in which it is located. However, any nonconforming use existing on December 28, 1922 may be continued, provided that the building or premises involved shall neither be altered nor enlarged unless the use shall be changed to a use permitted in the district. No nonconforming use, if once changed to a use permitted in the district in which it is located, shall ever be changed back to a nonconforming use. Nothing in this chapter shall prevent the restoration of a building destroyed less than 50% of its value, exclusive of the foundations, by fire, explosion, act of God, or act of the public enemy, subsequent to December 28, 1922 or shall prevent the continuance of the use of such building or part thereof as such use existed at the time of such destruction of such building or part thereof. Nothing in this chapter shall prevent the restoration of a wall declared unsafe by the building inspector. [Id. at § 18-4]
During the course of this litigation the 1967 zoning ordinance was amended. On January 5, 1984, the borough adopted a revised ordinance which places plaintiff's property within a newly created R-2 district, one of four such residential zones. Churches are still excluded except as a permitted conditional use in the R-4 district:
18-69. Regulations for R-1, R-2, R-3 and R-4 Residential Districts.
a. Purpose. The purpose of the R-1, R-2 and R-3 Districts is to recognize and preserve the existing pattern of detached dwellings. The purpose of the R-4 District is to recognize and preserve the existing pattern of small lot housing. The concepts of these residential districts is to allow the borough to provide a variety of housing responsive to market needs.
b. Principal uses.
1. Permitted principal uses (land and buildings).

*581 (a) Single family dwellings in accordance with the standards set forth below:
* * * * * * * *
d. Conditional uses.
* * * * * * * *
2. Permitted conditional uses in the R-2 and R-3 Districts.
(a) None.
3. Permitted conditional uses in the R-4 District.

(a) Churches or other places of worship. [Borough of Deal Ordinance § 18-69 (1984); emphasis supplied].
Our Supreme Court recently held both the New Jersey and the United States Constitutions preclude as impermissibly vague "a municipal zoning ordinance that excludes `churches and similar places of worship' from a residential use district." State v. Cameron, 100 N.J. 586, 589 (1985). The Cameron majority reasoned that the ordinance was constitutionally vague and unenforceable because it was "applied to prohibit a minister from temporarily using his home to hold a one-hour religious service each week for his congregation." Ibid. In a concurring opinion, Justices Clifford and O'Hern joined in the result but felt compelled to state separately that:
The Court comes tantalizingly close to the right answer. It hints at it. But by avoiding coming to grips directly with the profound underlying issue  namely, whether a municipality can prevent residents from preaching, praying, singing hymns, and coming together in the name of their Lord in a private residential dwelling  the Court fails to put to rest an important and troublesome issue.... [Id. at ___ (Clifford, J., concurring)].
That issue, unresolved in Cameron, is now before this Court.
The New Jersey Constitution states that "[n]o person shall be deprived of the inestimable privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience." N.J. Const. (1947) Art. I, par. 3. The United States Constitution similarly states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., Amend. I. It is now well settled that the New Jersey Constitution may be interpreted to expand upon the rights and freedoms guaranteed by the United States Constitution. Oregon v. Kennedy, 456 U.S. 667, 102 *582 S.Ct. 2083, 72 L.Ed.2d 416 (1982); State v. Hunt, 91 N.J. 338 (1982), and Right to Choose v. Byrne, 91 N.J. 287 (1982). In deciding this matter, the court places exclusive reliance upon the rights and privileges guaranteed by our State Constitution and its separate and independent progeny of caselaw. Reference to the Federal Constitution and caselaw is made only for the purpose of guidance. Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (United States Supreme Court will not review judgment of a state court which rests upon adequate and independent state grounds if the state court makes clear that the federal cases being used do not themselves compel the result reached.).
Here the entire matter was precipitated when a few of Rabbi Farhi's neighbors complained to town officials that car doors could be heard slamming on weekday mornings and that from the street the congregants could be heard saying prayers. However, "[t]here is no amplification, no parking lot, no sign, no cross, no defacement of the neighborhood." State v. Cameron, supra at 604 (Clifford, J., concurring). There was also expert testimony which described a significant increase in automobile congestion, though that would hardly be the case if nearly everyone arrives for most religious services on foot. "We are talking about a few folks gathering at someone's home." Ibid. As in Cameron, here too, the governmental power of the Borough of Deal is "marshalled to combat these conditions through enforcement of a zoning restriction against churches in a residential zone, in order to stifle the religious activities described above." Ibid. Just like Reverend Cameron, Rabbi Farhi also "invites into his residence those with whom he shares mankind's deepest beliefs. His purpose is to pray ... and ... to deliver a message of inspiration." Ibid. The court cannot fathom a set of facts more illustrative of a principal, accessory, conditional and incidental use of a property as a residence than the use which Rabbi Farhi makes of his property. It is exactly this kind of instance  prayer in the *583 privacy of one's home  that the drafters of our State Constitution sought to protect in N.J. Const. (1947), Art. I, par. 3.
The court therefore holds that the guaranty of freedom of worship as set forth by our State Constitution forecloses any use by a municipal authority of its zoning power to prohibit the free exercise of religious activity in the privacy of one's home. In so holding, the court relies upon the test and rationale as set forth in Cameron.
[T]he power to affect, through zoning, religious activity in a residential area surely has its limits. Like any other aspect of the police power, the zoning authority must be exercised for the general welfare of the community, see Southern Burlington County, N.A.A.C.P. v. Mt. Laurel Twp., 92 N.J. 158, 208 (1983) (Mt. Laurel II), and "must be exercised within constitutional limits." Moore v. City of East Cleveland, 431 U.S. 494, 514, 52 L.Ed.2d 531, 546 (1977) (Stevens, J., concurring in judgment). Moreover, courts have held that religious activity itself is in furtherance of public morals and the general welfare, see Matter of Diocese of Rochester v. Planning Board of Town of Brighton, 1 N.Y.2d 508, 154 N.Y.S.2d 849, 136 N.E.2d 827 (1956), and that religious institutions enjoy a highly-favored and protected status, which severely curtails the permissible extent of governmental regulation in this area. Westchester Reform Temple v. Brown, 22 N.Y.2d 488, 293 N.Y.S.2d 297, 239 N.E.2d 891 (1968). In enforcing the Franklin township ordinance so as to forbid defendant's conduct, the State has therefore exceeded the limits of its authority.
[Z]oning regulations, like all police power legislation, must be reasonably exercised  the regulation must not be unreasonable, arbitrary or capricious, the means selected must have a real and substantial relation to the object sought to be obtained, and the regulation or proscription must be reasonably calculated to meet the evil and not exceed the public need ...
[Kirsch Holding Co. v. Borough of Manasquan, 59 N.J. 241, 251 (1971).]
The free-exercise clauses of the United States and New Jersey Constitutions extend to all lawful conduct founded in religious belief. See Wisconsin v. Yoder, 406 U.S. 205, 220 [92 S.Ct. 1526, 1535] 2 L.Ed.2d 15, 27-28 (1972); Thomas v. Review Bd. of the Indiana Employment Sec. Div., 450 U.S. 707 [101 S.Ct. 1425, 1426] 67 L.Ed.2d 624 (1981); Sherbert v. Verner, 374 U.S. 398, 402-03 [83 S.Ct. 1790, 1793] 10 L.Ed.2d 965, 969-70 (1963). Deprivation of the protections afforded thereby requires the State demonstrate some "overriding governmental interest," United States v. Lee, 455 U.S. 252, 257 [102 S.Ct. 1051, 1055] 71 L.Ed.2d 127, 132 (1982), that justifies the "substantial infringement of appellant's First Amendment right" and to show that "no alternative forms of regulation would combat such abuses without infringing First Amendment rights." Sherbert, supra, 374 U.S. at 406-07 [83 S.Ct. at 1795] 10 L.Ed.2d at 972; see also New Jersey Bd. of Higher Educ. v. Shelton College, 90 N.J. 470, 483 (1982) (state regulation of higher education must choose least restrictive *584 means that will accommodate free exercise of religion). [100 N.J. at ___-___; footnote omitted].
The Shelton College case held that the First Amendment's free exercise clause was not violated by a statute which required any institution that conferred a baccalaureate degree to secure a license from the State, including a sectarian college whose religious precepts arguably precluded state licensure. N.J. Bd. of Higher Ed. v. Shelton College, supra, 90 N.J. at 470. In evaluating the overriding governmental interest which was the least restrictive means to accommodate the constitutional guaranty of free exercise of religion, our Supreme Court stated that: "the question remains one of balancing  giving due consideration to the weight of the interest asserted by the government and the extent and nature of the burden on the religious practice and the religion as a whole." Id. at 483, n. 3. The court is also well aware, however, that "[t]he constitutional right to the free exercise of religion is not a promise that following one's faith will be free from cost. All the [New Jersey] Constitution assures is that government will not interfere with the exercise of religious freedom." Right to Choose v. Byrne, supra, 91 N.J. at 315.
Applying these principles to the case at bar, it is evident that both the 1967 and 1984 ordinances violate N.J. Const. (1947), Art. 1, par. 3, protections for the free exercise of religion. The 1967 ordinance is unduly burdensome. Attention is directed to the fact that a literal reading of section 18-6.2 would preclude not only the use but the existence of detached garages on residential property. The 1984 ordinance fares no better. Although the borough corrected the detached garage problem, it permits "churches or other places of worship" only as a conditional use in the R-4 zone. Borough of Deal Ordinance § 18-69(d)(3)(a). This violates our State Constitution. Not only has the borough failed to select the least restrictive means to accommodate plaintiff's right to freely exercise his religion, but it fails to demonstrate any governmental interest which could arguably be classified as overriding. Indeed, testimony has been to the contrary. The action against Rabbi Farhi *585 was prompted by governmental concerns of noise, traffic and crowding. Yet the testimony offered by defendants suggest no facts which support such assumptions. Nothing in this opinion, however, should be construed to diminish the expression of legitimate governmental concerns. But it bears reminding that they "can be addressed adequately ... by existing [or additional] local ordinances dealing with parking, noise or health," and not in the manner chosen by the Borough of Deal. State v. Cameron, supra, 100 N.J. at 607 (Clifford, J., concurring). See also State v. Cameron, 189 N.J. Super. 404, 410-411 (App.Div. 1983) (Antell, J.A.D., dissenting).
For all the reasons stated, Rabbi Farhi is not and has not been in violation of the 1967 or 1984 zoning ordinance of the Borough of Deal because of his constitutional right to freely exercise his religious beliefs as guaranteed by our State Constitution.
Counsel for plaintiff will submit the appropriate order under the five day rule.