223 N.J. Super. 55 (1988)
537 A.2d 1336
JEHOVAH'S WITNESSES ASSEMBLY HALL OF SOUTHERN NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WOOLWICH TOWNSHIP OF NEW JERSEY, A MUNICIPAL TOWNSHIP; THE PLANNING BOARD OF WOOLWICH TOWNSHIP, NEW JERSEY; WALTER BUTLER, SAMUEL BELFIORE, SAMUEL MACCARONE, SAMUEL CASELLA, BARBARA CASELLA, WILLIAM SCHOENER, STEVEN MUCHA, GORDEN YETTER, INDIVIDUALLY AND AS MEMBERS OF THE GOVERNING BODY OF WOOLWICH TOWNSHIP; ALBERT STECHER, JR., INDIVIDUALLY AND AS MAYOR OF WOOLWICH TOWNSHIP, NEW JERSEY; AND JOHN DOE, A FICTITIOUS NAME, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1987.
Decided February 19, 1988.
*56 Before Judges KING, GAULKIN and GRUCCIO.
Patrick F. McAndrew argued the cause for appellants (Brandt, Haughey, Penberthy, Lewis & Hyland, attorneys).
*57 Frank E. Catalina argued the cause for respondent (Margulies, Wind, Herrington & Katz, attorneys).
PER CURIAM.
Defendants Woolwich Township and its representatives (Woolwich) appeal from a final judgment which remands the site plan application of plaintiff Jehovah's Witnesses Assembly Hall of Southern New Jersey (Assembly Hall) to the Woolwich Planning Board "for further consideration in accordance with the Court's written opinion" reported at 220 N.J. Super. 381 (Law Div. 1987). That opinion concludes "that the total exclusion of churches and places of worship from residential districts violates the guarantee of freedom of religion as provided for by the New Jersey Constitution" and that Woolwich "cannot totally exclude plaintiff's use." Id. at 387. We find insufficient justification in the present record for those conclusions. We accordingly reverse.

I.
Assembly Hall, as contract purchaser of a 59 acre tract,[1] applied for site plan approval to construct a 1500 seat hall in Woolwich, a rural township of 21.48 square miles with a population of approximately 1200. The Hall would be surrounded by a two-story administrative office, storage rooms and meeting room facilities, with a total floor area of 57,000 square feet. The application also sought approval for a 9600 square foot maintenance building, on-site water supply and sewage disposal facilities and 4.89 acres of parking and access driveways. The tract was then located partially in an R-2 (residential) zoning district and partially in an M (manufacturing) district, in both of which churches and places of worship were permitted uses.
*58 During the pendency of the site plan application, Woolwich amended its zoning ordinance. Among other changes, the municipality placed the entire Assembly Hall tract in an R-2 zone and excluded as a permitted use from that zone, and from all other residential zones, any "church or any place of worship including parish house and Sunday school building."
This action was then filed. The Assembly Hall's complaint, as amended, alleged that the zoning amendments were "arbitrary, capricious, discriminatory and unlawful," that they constituted "unlawful, invidious discrimination directed against the religious beliefs of plaintiff," that they were undertaken "in bad faith and for purposes not contemplated by or intended by reasons or purposes behind zoning legislation," that they effected "an unlawful prohibition of the free exercise of religion and unlawful denial of the fundamental rights of freedom of assembly and association" and that the ordinance as amended was "unconstitutionally vague." Invoking various provisions of the United States and New Jersey Constitutions as well as the Federal Civil Rights Act (42 U.S.C. § 1983), defendants sought equitable relief and money damages.
Assembly Hall concurrently filed in the Federal District Court a complaint which essentially duplicated the Law Division complaint. By a "reservation of rights" included in the Law Division complaint, Assembly Hall asserted that the District Court "has original jurisdiction of all federal questions, federal civil rights violations and violations of plaintiff's rights under the United States Constitution." Accordingly, plaintiff asked the Law Division "to stay action on all claims raised by the pleadings herein which assert such federal constitutional rights until the United States District Court has ruled on all federal questions." Assembly Hall requested that the Law Division only "consider and rule on all issues and claims of a non-federal and non-constitutional nature raised by the pleadings submitted herewith." Woolwich subsequently moved unsuccessfully to dismiss the federal complaint, which is still pending and undecided.
*59 Shortly after the filing of the Law Division complaint, the trial judge entered a management order directing Assembly Hall to procure a transcript of the Planning Board proceedings and ordering that the case "be tried in open court upon the record below at a date to be set by the court after receipt of the transcript." In keeping with that order, the matter was disposed of at a March 3, 1987 hearing which consisted solely of the argument of counsel. Apparently deferring all other issues to the federal litigation, counsel for Assembly Hall argued that under the New Jersey Constitution "it is an invalid, unreasonable exercise of the zoning prerogative on the part of the Township to simply zone out religious uses from a residential area." The trial judge so held and accordingly remanded the matter to the Planning Board for reconsideration of the site plan application with the directive that the municipality "cannot totally exclude [the Assembly Hall] use." 220 N.J. Super. at 387. Woolwich appeals.

II.
As Justice Clifford pointed out in his concurring opinion in State v. Cameron, 100 N.J. 586 (1985), the question whether a municipality can, through its zoning power, exclude from residential zones churches and similar places of worship is an open one in this state. Id. at 605 (Clifford, J., concurring). It is a "provocative and portentous issue" which calls for "exacting scrutiny" and "hard thought." Id. (Clifford, J., concurring). The trial judge here purported to resolve that issue by announcing, upon a narrowly constructed record and with essentially no findings of fact, a broad and absolute rule that "the total exclusion of churches and places of worship from residential districts violates the guarantee of freedom of religion as provided for by the New Jersey Constitution." 220 N.J. Super. at 387. Neither that nor any other determination of the issue can properly be made on the record presented to us.
*60 The exclusion of churches from residential districts has been described as one of the most common church-zoning issues facing the courts over the last three decades. Note, "Land Use Regulation and the Free Exercise Clause," 84 Colum.L.Rev. 1562, 1568 (1984). Courts have approached that issue in a variety of ways, some focusing on First Amendment free-exercise considerations, some using due process analysis. Id. at 1562, 1568-1569. The New Jersey cases show no clear pattern, drawing on, and sometimes merging, both free-exercise and due process analysis. See, e.g., State v. Cameron, 100 N.J. at 606 (Clifford, J., concurring); id. at 610 (Garibaldi, J., dissenting); Farhi v. Deal Bor. Comm'rs., 204 N.J. Super. 575, 583-584 (Law Div. 1985); Sexton v. Bates, 17 N.J. Super. 246 (Law Div. 1951), aff'd o.b., 21 N.J. Super. 329 (App.Div. 1952). Case law and academic discussion, moreover, offer variant approaches to both the free-exercise and the due process tests. See generally, 84 Colum.L.Rev. at 1562. But there is one common theme in the cases and academic comment: the court must make a thorough exploration and a careful evaluation of the facts bearing on the competing religious and governmental interests.
We will not attempt to catalog all of the factual considerations which may bear on the resolution of such a question. Some of the significant considerations, however, are as follows. The court must determine whether the activity allegedly burdened by the zoning ordinance is in fact religious. See, e.g., Lakewood, Ohio Congregation of Jehovah's Witnesses v. City of Lakewood, 699 F.2d 303 (6th Cir.1983). It must determine whether the ordinance imposes a significant burden on religious practice. Compare Cameron, 100 N.J. at 586 (prayer meetings conducted in privacy of a home) with Bates, 17 N.J. Super. at 246 (construction of a mikvah). See also Jehovah's Witnesses Assembly Halls of New Jersey, Inc. v. City of Jersey City, 597 F. Supp. 972 (D.N.J. 1984) (renovation of theater for religious meetings, movies and stage productions). Another significant consideration is what alternative locations are reasonably available *61 to the religious organization and what zoning alternatives are available to reasonably accommodate the organization. See, e.g., Grosz v. City of Miami Beach, 721 F.2d 729 (11th Cir.1983); 84 Colum.L.Rev. at 1562. The court must also carefully identify and evaluate the governmental interest in establishing and maintaining its zoning plan. As Justice Clifford suggested with characteristic brio in Cameron, there is a substantial difference between a church conducted "in the humble residence of its minister" and
the Most Reverend and Right Honorable Robert Alexander Kennedy Runcie, M.C., D.D., 102nd Archbishop of Canterbury and Primate of All England, plopping down Canterbury Cathedral in the middle of bucolic Somerset County, or of the Camerons' neighborhood being transformed into St. Peter's Square. [100 N.J. at 604.]
However tested and articulated, the propriety of the zoning restriction must turn on a weighing of the conflicting religious and governmental interests thus identified.
Here none of the relevant factual considerations were explored or evaluated in the trial court. We have neither a record nor findings as to such matters as the alleged religious nature and significance of the activities to be conducted at the Assembly Hall; the availability of other property in Woolwich, or elsewhere in the area to be served by the Assembly Hall, for location of the facility; the convenience and economic viability of those other locations or the kind and extent of disruption of the Woolwich zoning plan that would result from construction of the Assembly Hall. Until the relevant facts are explored, the validity of the zoning restrictions cannot properly be addressed.
We are thus constrained to reverse the judgment which remands the matter to the Planning Board. We remand the matter instead to the Law Division, which shall conduct a plenary hearing, report its findings of fact and conclusions of law and enter judgment accordingly. We do not retain jurisdiction.
NOTES
[1] We were advised at oral argument that the Assembly Hall has since taken title to the tract.